JOHN J. HALEY & another *vs.* MANUFACTURERS' FIRE AND MARINE INSURANCE COMPANY.

Suffolk.    March 8. — May 6, 1876.    AMES & MORTON, JJ., absent.

A mortgagee of chattels agreed to assign his mortgage, of which there had been a breach of condition, to a person proposing to purchase the chattels, (who was not then and who never became the owner of the equity of redemption,) upon the payment of certain notes given by him for the purchase. The agreement contained the following clause : " In case of failure to pay said notes, or either of them, or the interest, the said party of the first part [the mortgagee] resumes the right to foreclose said mortgage, or take or sell said property, the same to all intents or purposes as if said notes below mentioned were the notes mentioned and specified in said mortgage, and it being the intent hereof to allow said mortgage to remain *as security for the payment of the notes below mentioned.*" *Held*, that this agreement was collateral to the mortgage, and that the payment of one of the notes was not a payment *pro tanto* of the mortgage debt.

A mortgagee of chattels agreed to assign his mortgage upon payment by the purchaser of $62,000. He had previously insured his interest as mortgagee to the amount of $57,000. After a partial payment of $20,000 by the proposed purchaser, there was a loss by fire of $53,000 on the mortgaged property. *Held*, that the insured interest was not diminished by such partial payment.

A mortgagee of chattels agreed to assign his mortgage, with a stipulation that, until the assignment was completed, the proposed purchaser should keep the property insured for the benefit of the mortgagee. This he did not do, and the mortgagee insured his interest as mortgagee in his own name. *Held*, that a liability of the proposed purchaser for the cost of the insurance under his contract with the mortgagee, did not affect the contract between the mortgagee and the insurers.

CONTRACT upon a policy of insurance, by which the defendant insured the plaintiffs in the sum of $5000, on " their interest as mortgagees " in certain furniture, in the Grand Central Hotel, at Saratoga Springs, from January 10, 1874, to January 10, 1875. The case was submitted to this court on agreed facts, in substance as follows :

The property insured was mortgaged to the plaintiffs by two mortgages, one by Charles R. Brown and the other by Robert

Hamilton, to secure the sum of $99,462.38, both mortgages being dated August 1, 1872. Default was made in the performance of the conditions of the mortgages, and, without taking any steps to foreclose the same, the plaintiffs, on June 2, 1873, no part of the mortgage debt having been paid, entered into an agreement with George O. Marcy, whereby they agreed to assign to him the mortgages and notes, upon the payment to the plaintiffs, by Marcy, of $90,000. Under this agreement, Marcy paid the sum of $25,000, and on April 3, 1874, he, without having made any further payment under the agreement, relinquished all his claims thereunder.

On May 1, 1874, the plaintiffs, as parties of the first part, entered into an agreement, under seal, with Alexander Cherry, as party of the second part, which, after reciting that the parties of the first part were holders of the Brown and Hamilton mortgages, and that the party of the second part was desirous of purchasing the mortgages, and all the right, title and interest of the parties of the first part in the furniture and property included in said mortgages, proceeded as follows :

" 1. The said parties of the first part agree to assign and transfer to said party of the second part, his heirs or assigns, the said chattel mortgages, and all their right, title and interest in said furniture and property therein described, on payment of all the four promissory notes hereinafter mentioned.

" 2. Said party of the second part agrees to keep said furni ture and property insured for the benefit of said parties of the first part, pursuant to the terms and conditions of said mortgages, in responsible companies.

" 3. In case of failure to pay said notes, or either of them, or the interest, the said parties of the first part resume the right to foreclose said mortgages, or take or sell said property, the same to all intents or purposes as if said notes below mentioned were the notes mentioned and specified in said mortgages, and it being the intent hereof to allow said mortgages to remain as security for the payment of the notes below mentioned.

" 4. Said party of the second part may, from this date, take possession of said furniture and property.

" 5. In consideration of the above, the said party of the second part has made, and at the time of the execution of this

agreement delivered to the said parties of the first part, his four promissory notes amounting to $62,500, payable to the order of Henry A. Clark and George Harvey, and indorsed by them and payable at the Commercial National Bank of Saratoga Springs, with interest, as follows : $20,000 in four months ; $20,000 in sixteen months ; $20,000 in twenty-eight months ; $2,500 in twenty-eight months."

Cherry paid the first of the notes secured by said agreement, and no further payment has been made by him. On October 28, 1874, he assigned to the plaintiffs his interest under said agreement. Neither Marcy nor Cherry ever purchased the equity of redemption of said furniture.

On October 1, 1874, the Grand Central Hotel was destroyed by fire, and a portion of the property insured was burned ; due proof of this loss was made by the plaintiffs. The value of the mortgaged property before the fire was $66,308.26, and the value of the portion saved was $13,167.69, making the amount of loss on the furniture by the fire $53,140.57. The total amount of insurance was $57,000.

The plaintiffs still hold their original mortgages and mortgage notes, and have paid premiums for insurance to the amount of $3724, which, by the terms of the mortgages, should have been paid by the mortgagors. Other collateral security, mentioned in the agreement with Marcy, for said notes, is worthless, and the makers are insolvent. No part of said notes or the interest thereon has ever been paid, unless the facts hereinbefore stated constitute payment.

The plaintiffs contend that their interest as mortgagees was equal to the whole value of the mortgaged property at the time of the loss ; and it is agreed that, if this claim is sustained, judgment is to be entered for the plaintiffs for $4661.45, with interest from January 23, 1875.

The defendant contends that the value of the plaintiffs' interest as mortgagees, and for which they are entitled to indemnity at the time of the loss, is determined by deducting the payment by Cherry of $20,000 from the sum of $62,500, for which said plaintiffs agreed to sell to Cherry, also deducting the value of the property saved. If this position is sustained by the court, judgment may be entered for $2573.01, with interest from January 23, 1875.

*W. G. Russell & G. Putnam, Jr.,* for the plaintiffs.

*H. C. Hutchins & A. S. Wheeler,* for the defendant.

DEVENS, J.   It is contended by the defendant, as the plaintiffs had agreed to sell their mortgages (upon which a much larger amount was due) for the sum of $62,500, upon payment by Cherry of certain notes with interest, amounting to that sum, one of which notes, amounting to $20,000, had already been paid at the time of the occurrence of the loss, that the sum of $42,500, with interest, is all that can now be recovered of the insurers, although the loss of property by the fire was $53,000 in amount, that being all that the plaintiffs would have received if Cherry had paid his notes.   This argument treats the interest of the plaintiffs as mortgagees as determined by the amount for which they were ready to sell their mortgages, although the debt due the plaintiffs upon the mortgages and the property upon which they were secured both exceeded the amount of the loss.

The contract made by the plaintiffs with Cherry was one collateral to that made by the mortgages, and was for the sale of those mortgages, which were to be transferred upon full payment by Cherry of the amount agreed upon.   Whether the plaintiffs continued to own them, or whether they became the property of Cherry, the mortgages still continued to exist, unaffected by any payments which Cherry might make to the plaintiffs upon his contract.   He was not the owner of the equity of redemption; and, if these mortgages are to be treated as paid *pro tanto* by the payments made by him, the result would follow that, when these were completed and the mortgages were transferred to him, no debts would exist, upon non-payment of which he could foreclose them as against the owner of the equity.   While the agreement provides that the plaintiffs were not to foreclose their mortgages or to sell the property so long as Cherry continued to make his payments, it declares that in case of the failure to pay the notes, the plaintiffs resume the right to foreclose them, and to take or sell the property, as if the notes of Cherry were the notes mentioned in the mortgages, it being the intent to allow the mortgages to remain as security for the payment of the Cherry notes.   These latter clauses cannot be construed as limiting the foreclosure to the amount due upon the Cherry notes. The mortgages were not to be foreclosed until there was a fail-

ure by Cherry to pay his notes ; but when this default was made and the plaintiffs resumed their rights, these rights were not affected by what had been paid by Cherry, or by the existence of the contract with him.

Nor is the interest of the plaintiffs as mortgagees, which is the interest insured, limited by the amount due upon the Cherry notes.   They held the legal title to the mortgages, and had an interest in the property insured to the amount of the debt it was mortgaged to secure.   Although they had made a contract for the sale of those mortgages, such contract was executory simply, its terms might never be complied with, or it might be abandoned by mutual agreement of the parties.   No property had passed to Cherry, and, although he had made no default, he had not complied with the terms upon which he was to obtain these mortgages when the loss occurred.   Even if he was in possession of the mortgaged property, he was not in possession of the mortgages, which the plaintiffs had agreed to sell; these were kept in their own possession.   *Suffolk Ins. Co.* v. *Boyden*, 9 Allen, 123. *Rider* v. *Ocean Ins. Co.* 20 Pick. 259.   An executory contract to convey a mortgagee's interest does not deprive him of his right to insure, or limit his recovery to the amount of the unpaid purchase money.   *Davis* v. *Quincy Ins. Co.* 10 Allen, 113.

There was a provision in the contract that Cherry should keep the property insured for the benefit of the plaintiffs; but while this was not done by him, but by the plaintiffs, who had the property actually insured at the date of the agreement, even if it were held that the premiums for this insurance were properly chargeable to Cherry and the amount could thus be treated as paid by him, this would not affect the result.   If a creditor, at his own expense and for his own benefit, insures the property mortgaged, the debtor has no benefit therefrom ; yet if the debtor insures property held as collateral for the benefit of the creditor, any sums received from such insurance are applied for the benefit of the debtor.   *King* v. *State Ins. Co.* 7 Cush. 1. The interest of the plaintiffs was still an interest to the amount of the mortgage debt, the preservation of which was essential for the protection of Cherry as well as themselves; the mortgages and the right to the property described therein were theirs.   If, by reason of their agreement with Cherry and its

subsequent performance bv him, they should afterwards beccme responsible to account to him for such sums as they might have received over and above what he was to pay, it would be a matter not affecting their rights here and in which the defendant had no interest.

Nor is it important that, by the relinquishment of the contract with Cherry, which took place after the loss but before action brought, the plaintiffs will in fact receive a larger amount from the insurance than they would have done if such contract had been carried out. That the occurrence of the loss may either, because of the existence of collateral contracts, or because of the abandonment of such contracts, indirectly give to the insured an advantage, does not concern the insurer. He does no more than indemnify the insured according to his policy if he pays no more than the value of the property destroyed, the sum insured upon it and the interest of the insured at the time of the loss. *Suffolk Ins. Co.* v. *Boyden*, 9 Allen, 123, 127.

By the terms of the agreed statement of facts there must be judgment for the plaintiffs for the larger sum.

*Judgment for the plaintiffs accordingly.*