## CHARLES J. LITTLE *vs.* PHŒNIX INSURANCE COMPANY.

Suffolk.   March 12. — Nov. 19, 1877.  ENDICOTT & SOULE, JJ., absent.

Household furniture belonging to A. was sold to B. and a receipted bill of parcels
given, signed by A.   B., while the furniture was in the possession of A., in a house
belonging to C., wrote on the bill of parcels, "I hereby transfer and sell all of the
above furniture to C.," signed the writing, and delivered it to C., who went to the
house and saw the property, and it was orally agreed that the property should re-
main in the custody of A., but that possession of it was given to and received by
C., and that the legal title was to be in him.   C. took out a policy of insurance on
the property, against loss by fire, in which it was described as "his household fur-
niture," in a house, the location of which was described.   During the term of the
policy, and while the furniture remained in the house, a loss occurred.   *Held,* that
C. had an insurable interest in the furniture; that it was properly described; and
that there was no material concealment or misrepresentation, in failing to state
that the property was in a house occupied by A.   *Held, also,* that statements made
by C. under oath, in proofs of loss, "that the property belonged exclusively to the
assured, and that no other person had any interest therein," and that "the articles
named belonged to and were in the possession of the assured at the time of the
fire," did not amount to fraud or false swearing, within a clause in the policy re-
quiring proofs of loss, and providing that any fraud or false swearing should for-
feit all claim under the policy.

A mistake of fact or honest misstatement under oath, on the part of an assured, does
not amount to fraud or false swearing, within the meaning of those words in a
policy of fire insurance.

A policy of insurance against fire was issued by a foreign stock company, through
its agents in this Commonwealth, on household furniture.   The policy provided
that, in case of loss, the insured should "forthwith" give notice thereof to the
company, and, "as soon after as possible," make formal proof of loss, after which
the company was to have sixty days in which to pay the loss; and that no action
should be brought on the policy unless begun within twelve months of the loss.
In an action begun on September 3, 1875, there was evidence that the loss hap-
pened on January 26, 1874; that the insured gave notice forthwith of the loss to
the agents from whom he procured the policy, and who referred him to one P. as
the adjuster for the company, to whom he gave a memorandum of the furniture
destroyed; that P. made no objection to its form, and both acted on it as sufficient,
the only difference between them being as to the amount of the loss; that, in July
the agents who had issued the policy ceased to act, and the negotiations were con-
tinued with one T., as general agent of the company, who testified, for the defend-
ant, "that he succeeded P. in the business;" that he received the memorandum
from P. in September, and made no objection to its sufficiency; that the insured,

after this, not finding T. at his office, though he called several times, went to the state where the company had its office, and saw the vice-president, who referred him to T.; that T. encouraged him to believe that the case would be settled, and promised to meet him; that, on November 25, the insured wrote to the company about the matter, and stated that T. had promised to see him, but had not done so; that the secretary of the company replied that T. had been kept busy at the office, and that the company was not aware that any proof of loss had yet been furnished the company; that this was the first intimation the insured had that any objection was taken to the proofs of loss; that in December he wrote to T. and expressed a wish to see him soon, but received no reply; that no further communication was had until March 30, 1875, when the insured sent formal proofs of loss, and asked for an interview with T., and received a reply signed by T., with the words " general agent " added, in which he said that an interview would be useless, " as we cannot admit any liability." *Held*, that the evidence was sufficient to warrant the jury in finding that P. and T. acted as general agents, with the knowledge and approval of the company, having authority to settle the loss, and that they waived the formal preliminary proofs of loss required by the policy; and also in finding that the agents of the company delayed a settlement upon the pretence that they were seeking to adjust the loss, and, while admitting the liability of the company, intended to prolong the negotiation and induce the plaintiff to forego his action for twelve months; and that they wilfully and in bad faith misled him in this respect, and prevented him from so bringing his action; and that, this being so, the action could be maintained

CONTRACT upon a policy of insurance, by which the defendant insured the plaintiff against loss or damage by fire, in the sum of $3000, " on his household furniture, useful and ornamental, wearing apparel, musical instruments, plate, plated ware, books, pictures, engravings, statuary and ornaments, situate in frame dwelling-house on North Beacon Street, corner of Chester Street, Brighton," from August 19, 1872, to August 19, 1877. The policy contained the following provisions:

" And the assured hereby covenants and engages that the representation given in the application for this insurance contains a just, full and true exposition of all the facts and circumstances in regard to the condition, situation, value and risk of the property insured, so far as the same are known to the assured, and material to the risk; and that, if any material fact or circumstance shall not have been fairly represented, or if the assured shall make any attempt to defraud the said company; that in every such case the risk hereupon shall cease and determine, and the policy be null and void, — unless confirmed by a new agreement thereupon, written after a full knowledge of such facts and circumstances."

" And the assured further covenants and agrees that, in case of any loss or damage, the said company shall have the right to enter upon and rebuild or repair the premises, or replace the property lost or damaged with other of the same kind and equal goodness, at any time within ninety days after due notice of the loss, or such further time as may be reasonable, or to pay for the same in sixty days after proof of the loss or damage thereon."

" All persons insured by this company, and sustaining loss or damage by fire, are forthwith to give notice thereof to the company; and as soon after as posssible to deliver in a particular account of such loss or damage, signed with their own hands, and verified by their oath or affirmation ; they shall also declare, on oath, whether any and what other insurance has been made on the same property ; what was the whole value of the subject insured ; what was their interest therein ; in what general manner (as to trade, manufactory, merchandise or otherwise) the building insured, or containing the subject insured, and the several parts thereof, were occupied, at the time of the loss, and who were the occupants of such building, and when and how the fire originated, as far as they know or believe ; and also, if required, shall produce their books of account and other proper vouchers ; and, until such proofs are furnished, the loss shall not be deemed payable. Also, if there appear any fraud or false swearing, the insured shall forfeit all claim under this policy."

" It is expressly covenanted by the parties hereto, that no suit or action against this company, for the recovery of any claim by virtue of this policy, shall be sustainable in any court of law or chancery, unless commenced within twelve months next after the loss shall have occurred ; and should any suit or action be commenced against this company after the expiration of the aforesaid twelve months, the lapse of time shall be taken and admitted as conclusive evidence against the validity of such claim, any statute of limitation to the contrary notwithstanding."

" This policy is made and accepted upon the above express conditions, but shall not be valid until countersigned by the duly authorized agents of the Phœnix Insurance Company, at Boston, Mass."

Writ dated September 3, 1875. The declaration alleged the making of the policy on the plaintiff's household furniture, a

loss by fire on January 26, 1874, the giving of immediate no
tice of said loss by the plaintiff to the defendant, and the fur
nishing the proof of loss required by the policy in November
following ; that the delay in furnishing the proof of loss and in
bringing suit upon the policy was caused by the negligence and
improper action of the defendant; and that the defendant waived
the conditions of the policy thereunto appertaining.

The answer contained a general denial ; alleged that the proof
of loss was not furnished nor the action begun within the time
required by the policy; and that, if the plaintiff had any cause
of action on March 30, 1875, the same was forfeited by the
plaintiff's false swearing, in the proof of loss of that date, in re-
gard to the amount and value of the property on the premises
described, and in regard to the plaintiff's interest therein.

At the trial in the Superior Court, before *Dewey*, J., the jury
returned a verdict for the plaintiff, and the defendant alleged
exceptions, the material parts of which appear in the opinion.

*E. D. Sohier & J. D. Bryant*, for the defendant.

*R. M. Morse, Jr.*, for the plaintiff.

COLT, J. The plaintiff's title to the furniture insured was
acquired by bill of sale from Charles Green, absolute in form,
but intended by the parties only as security for money lent.
The property at the time of the sale was in a dwelling-house
owned by the plaintiff, but occupied up to the time of the fire
by Green. The parties to the sale went to the house, saw the
property, and declared that possession of it was given to and re-
ceived by the plaintiff. It remained in the custody of Green.
but it was understood that while the latter was to have the use
of it, the legal title was to be in the plaintiff. The furniture
belonged originally to one Charles Green, who sold it to Paul B.
Green, and gave to him a receipted bill of parcels, at the bottom
of which, at the time of the sale to the plaintiff, was written the
words, " I hereby transfer and sell all of the above furniture to
Charles J. Little, of Boston, Mass." This addition was duly
dated, signed by Paul B. Green, and delivered to the plaintiff.

1. The defendant contends that on this evidence the plaintiff
had no insurable interest in the goods, because there was only a
pledge of the property to secure the payment of money, the lien
on which was lost by allowing the goods to remain in the

session of the pledgor. But the written instrument produced is something more than an informal bill of parcels. It is sufficient to transfer the legal title, and it is evident that both intended that the legal title should be held by the plaintiff as security. Such an intention is inconsistent with a pledge by which the title remains unchanged in the pledgor, subject only to the lien.

The question is not as to the validity of the transfer as against creditors or subsequent purchasers. It is sufficient that the plaintiff acquired a title to the specific property insured which had not been defeated by creditors or otherwise at the time of the fire, and by the destruction of which he has suffered direct loss to the value of the property destroyed. *Haley* v. *Manufacturers' Ins. Co.* 120 Mass. 292, 296. *Eastern Railroad* v. *Relief Ins. Co.* 98 Mass. 420, 423. *Williams* v. *Roger Williams Ins. Co.* 107 Mass. 377, 379. *Clark* v. *Washington Ins. Co.* 100 Mass. 509.

We do not see that the defendant has any just cause to complain of the instruction given upon this point.* For the reason above stated, it cannot be fairly said that it was inapplicable to the facts, or tended to mislead the jury. The instruction requested was properly refused.† The transaction, as we have seen, could not be construed as a pledge, and, in the absence of any written condition, it could not in law, at least, be treated as a mortgage. *Pennock* v. *McCormick*, 120 Mass. 275. In legal effect it was a sale, with a right on the part of the seller by verbal agreement to repurchase.

---

* This instruction was as follows : " If the plaintiff had paid to Green the sum of $2000, and had received from him a bill of sale and delivery of the property, the plaintiff had an insurable interest therein, to the extent at least of the money paid therefor, though there may have been an understanding between the plaintiff and Green that, on repayment of the money, he would reconvey the property to him."

† This request was as follows : " The delivery to the plaintiff, as security for a loan made by him to Green, of a bill of parcels or a bill of sale of the furniture in the house occupied by Green, if the furniture thereafter remained, as before, in the possession of Green, and if the instrument was not recorded, would not in law make the plaintiff the owner of such property, as against third parties, and would not make the property ' his ' in such sense as to support the policy in this case."

2. The property was described in the policy, and is alleged in the plaintiff's declaration, to be the plaintiff's household furniture. But the considerations above stated dispose of the objection that the plaintiff had no such property as he caused to be insured and as he alleged in his writ. The jury were justified in finding that the legal ownership of it was in the plaintiff.

3. There was no material concealment or misrepresentation, in the absence of any inquiry or express stipulation on the subject, in failing to state that the property was in the custody of a lessee of the plaintiff. It was truthfully described as his household furniture, although it was not in his actual custody or in a house occupied by him. The written part of the policy gives accurately the location of the building in which it was placed.

4. The statements in the printed part of the proofs of loss "that the property belonged exclusively to the assured, and that no other person had any interest therein," and that "the articles named belonged to and were in the possession of the insured at the time of the fire," do not, in law, amount to fraud or false swearing within the terms of the policy. The jury may well have found that the plaintiff had the absolute and exclusive legal title ; and, as to the possession of the assured at the time of the fire, it is stated, in the clause immediately preceding the statement relied on as false and fraudulent, that the building containing the property destroyed was occupied in its several parts by Green and his family as a dwelling-house.

5. The instructions given as to the effect of misstatements in the proofs of loss were correct.\* The condition in the policy is

---

\* These instructions were as follows : " If, in any proof of the loss, the plaintiff wilfully or recklessly swore to that as true of which he was ignorant and which was not as sworn to, or if he swore to a statement as true which he knew to be otherwise than true, he would in either case by such false swearing forfeit all claim under the policy, and this action could not be maintained. This does not apply if a party by mistake should make a misstatement accidentally, not intentionally or wilfully; the word ' wilful ' is not used in the sense that he did not intend to write those words, but that there was wilful intention in him to misrepresent. Every man is bound to exercise good judgment ; if he recklessly, — in other words, carelessness or simple mistake on his part would not be sufficient, but if there was recklessness in making the statement, or it was wilfully made wrong, — then that would forfeit the claim under the policy."

that the insured shall forfeit all claim under it, if there appears any fraud or false swearing. This implies something more than some mistake of fact or honest misstatements on the part of the assured; unless, indeed, the mistake be in the misstatement of a fact which avoids the policy by its express terms, as in *Campbell* v. *Charter Oak Ins. Co.* 10 Allen, 213. The instruction requested on this point was properly refused.* *Daniels* v. *Hudson River Ins. Co.* 12 Cush. 416. *Curry* v. *Commonwealth Ins. Co.* 10 Pick. 535.

6. The jury must have found, under instructions not open to objection, that the defendant, through agents, by whose acts and declarations it was legally bound, had waived the formal proof of loss required by the policy, and had waived or was estopped from setting up the express stipulation that no suit for the recovery of any claim under the policy should be sustained unless commenced within twelve months next after the loss should have occurred. The fire occurred on January 26, 1874. It was conceded that no proof of loss, such as the policy required, was made out until March, 1875, and that no action was commenced until September following. All the evidence upon these points is reported. At the conclusion of the plaintiff's case, and again when all the evidence was in, the defendant asked the court to rule that there was no evidence to warrant a verdict for the plaintiff. Upon a careful examination of the report, we are of opinion that this request was rightly refused. It is a question of the sufficiency and not of the weight of the evidence.

The defendant is a foreign stock company, and its business in the Commonwealth must be mainly transacted through agents appointed by the managers of the home office. The plaintiff obtained this policy from Hovey & Fenno, of Boston, who were authorized to take risks, fill out policies and sign indorsements as agents for the defendant. At the same time the plaintiff took from them a separate policy for a much larger amount on

---

* This request was as follows : " If the plaintiff, in any paper offered by him as a proof of loss, stated that the property described in the policy in suit belonged exclusively to himself, and that no other person had any interest therein, when in fact he was only a pledgee or mortgagee thereof, and not in possession, such false swearing would avoid the policy."

the dwelling-house which contained the furniture in question. Immediately after the fire, he notified these agents of the loss on both policies and was referred to one Pierson, as the adjuster for the company. He gave to Pierson, at his request, a memorandum or list of the furniture claimed to have been destroyed, and proceeded first to settle with him by arbitration the loss upon the house, and received through him, from the company, at the office of the agents in Boston, in May or June following, by a draft filled out by him, substantially the full amount of the insurance on the house. Pierson took the memorandum of the furniture without any objection to its form, and there was evidence that both parties acted on it as sufficient proof, the only, matter of difference being as to the value of the furniture and the loss of some of the items in the list. While the negotiations for the settlement of the loss on the house were pending, and until July, 1874, frequent interviews were had with Pierson in reference to the loss on the furniture, without any objection made that no formal proof of loss had been presented. In July, Hovey & Fenno and Pierson ceased to act for the defendant, and the negotiations were continued with Tainter, as general agent for the company, who was a witness for the defendant, and who testified that he succeeded Pierson in the business. He received from Pierson in September the memorandum of furniture lost, satisfied himself as to what articles named in it had been saved, but, as the plaintiff testified, made no objection that it was not sufficient as proof of loss within the requirements of the policy.

The plaintiff having called several times at the office in Boston without finding Tainter, went to Hartford in October, and there met the vice-president, who committed the matter to Tainter for settlement. He was encouraged by the latter to believe the case would be settled. He exhibited his bill of sale of the furniture to Tainter, furnished him with a copy, and the latter promised to notify the plaintiff when he was in Boston, so that he could meet him, but failed to give any such notice.

On November 25, the plaintiff wrote to the company at Hartford, asking to be informed of its decision, and stating that Tainter had promised to see him in Boston in regard to this insurance, " where he should be in a few days and quite often thereafter. '

To this the assistant secretary replied that Tainter had been kept busy in the office, and was unable to visit Boston, and added that the company was not aware that any proof of loss had as yet been submitted. This was the first intimation, as the plaintiff testified, that any exception was taken to the proofs of loss.

In December he wrote to Tainter, expressing a hope to see him soon, to which no answer was made, and no further communication was had between them until March, when the plaintiff, as he testified, from extra caution, sent on formal proofs of loss, and expressed his wish to meet Tainter at Boston; to which he received a reply signed by Tainter, with the words "general agent" added, in which he stated that an interview would be useless, "as we cannot admit any liability." This was the first time that there was a distinct denial of all liability.

In all this, there was some evidence that both Pierson and Tainter acted as general agents, with the knowledge and approval of the company, having authority to settle the loss in question. The testimony of Tainter, that he succeeded Pierson, implies that the latter acted in the same relation and performed the same work for the company. There was evidence that they were charged with the whole duty of settling the loss, and in this respect represented the company. As a necessary incident, they had power to dispense with those stipulations for the benefit of the company, which had reference to the mode of ascertaining the liability and limiting the right of action. *Eastern Railroad* v. *Relief Ins. Co.* 105 Mass. 570. *Kennebec Co.* v. *Augusta Ins. Co.* 6 Gray, 204. *Gloucester Manuf. Co.* v. *Howard Ins. Co.* 5 Gray, 497.

As to the proof of loss, it is held that a general refusal to pay, followed by negotiations with the insured for a settlement, without objection to the form of the proof, will be a waiver of such objection. *Graves* v. *Washington Ins. Co.* 12 Allen, 391. Good faith requires in such case notice of the objection. *Heath* v. *Franklin Ins. Co.* 1 Cush. 257. *Eastern Railroad* v. *Relief Ins. Co.* above cited. And this rule is equally applicable to mutual insurance companies, however they may differ in respect to the power of their officers and agents to vary other essential stipulations of the contract. *Underhill* v. *Agawam Ins. Co.* 6 Cush.

440.  *Brewer* v. *Chelsea Ins. Co.* 14 Gray, 203.  *Priest* v. *Citizens' Ins. Co.* 3 Allen, 602, 605.  *Blake* v. *Exchange Ins. Co.* 12 Gray, 265.  There was sufficient evidence in the declarations and conduct of the defendant's agents to warrant the jury in finding a waiver in the formal preliminary proofs required by the policy.

In respect to the effect to be given to the limitation clause contained in the policy, the jury must have found, under the instructions given, that the agents of the company delayed a settlement upon the pretence that they were seeking to adjust the amount of the loss, and, while admitting the liability of the company, intended to prolong the negotiation and induce the plaintiff to forego his suit for twelve months, by leading him to believe that they did not intend to rely on the clause in question; that they wilfully and in bad faith misled him in this respect and prevented him from bringing his action within the time named.

Such a question is peculiarly proper for the consideration of the jury.  It involves the existence of bad faith on the part of the defendant, and that fact is more commonly inferred from the surrounding circumstances, which are sufficiently significant in character, than proved by direct and positive evidence.  It depends largely upon the appearance of the several witnesses upon the stand.  In deciding whether there is evidence in the case to support this finding, we give no consideration to the fact that much of it is contradicted.  It is enough that the conduct, declarations and delay of the defendant's officers and agents, according to the plaintiff's testimony, would justify the inference that they were acting in bad faith for the purpose alleged, and that the first notice of the insufficiency of the proof was given so late, that, allowing sixty days after proof of loss for the time which the company has to pay in, there would be left no time to commence an action within the twelve months required.  But without going into a detailed review of all the evidence, it is sufficient that we cannot say, as matter of law, that there was not enough to sustain the verdict.  *Fullam* v. *New York Ins. Co.* 7 Gray, 61, 63.  *Ames* v. *New York Ins. Co.* 4 Kernan, 253.  *Gooden* v. *Amoskeag Ins. Co.* 20 N. H. 73.

*Exceptions overruled*