judgments had been made to conform to section 1210 of the Code of Civil Procedure. But, assuming for present purposes that these doubts are resolved in favor of the petitioner, still I do not think that what occurred between Mr. Jones and Mrs. Morton was a legal presentation of the claim, even conceding the correctness of the former's version of the conversation,—a point which is disputed by the administrator. The creditor is required, by the notice given under the statute, to exhibit his claim, with the vouchers thereof, to the executor or administrator, who may, if he choose, require the claim to be supported by the affidavit of the claimant that it is justly due, that no payments have been made thereon, and that there are no offsets to it. Rev. St. pt. 2, c. 6, tit. 3, art. 2, §§ 34, 35.[1] The statute plainly intends that the claim shall be presented or exhibited in some writing, stating its nature and amount, the owner's name, and demanding its payment. The personal representative' of the estate is then in possession of information which will enable him to act intelligently, and either to admit the claim or take such steps to protect the estate against it as he shall deem prudent and necessary. This is the construction placed on the statute by the courts of this state, and by those of other states in whose statutes similar provisions and regulations are found. Cruikshank v. Cruikshank, 9 How. Pr. 350, 351; King v. Todd (Com. Pl. N. Y.) 15 N. Y. Supp. 156;' Robert v. Ditmas, 7 Wend. 523; Gansevoort v. Nelson, 6 Hill, 392; McDowell v. Jones, 58 Ala. 35; Farris v. Stoutz, 78 Ala. 134; Pfeiffer v. Suss, 73 Mo. 252. There is some evidence which tends to show that a larger sum might have been realized from the decedent's interest in the property of the firm of which he was a member at the time of his death, but the disappearance or destruction of the firm books makes an accounting with the surviving partner impracticable, and 'the testimony is not sufficiently definite to warrant a finding that the administrator should be charged with any specific sum on account of the partnership business, except the $200 received from Mr. Fisk for woolen cloth sold to him. There will be an unexpended balance in the administrator's hands of about $500, and that may be decreed to be applied on the petitioner's claim, after deducting the expenses of this accounting. Ordered accordingly.

---

(7 Misc. Rep. 562.)

### WATSON v. OSWEGO ST. RY. CO.

(Circuit Court, Oswego County. March 19, 1894.)

1. CARRIERS—EJECTION OF PASSENGER—USE OF FORCE.

In an action for ejecting plaintiff from a street car it appeared that defendant's president, under belief that plaintiff was drunk, ordered the conductor to put him off. The conductor thereupon ordered plaintiff to leave the car, and put his hand on his arm. Plaintiff, with the assistance of the conductor and a friend, then left the car. *Held*, that it was error to charge that no force was used in removing the plaintiff, as it was a question for the jury whether the conductor's act showed a disposition to use force to remove plaintiff, by which plaintiff was put in fear.

[1] 8th Ed. p. 2561.

**2. EVIDENCE—FAILURE OF PARTY TO TESTIFY—PRESUMPTION.**
    Failure of a party to testify as to facts within his knowledge raises a presumption that the testimony, if given, would be unfavorable to him.

Action by Rush S. Watson against the Oswego Street-Railway Company. Plaintiff moves for a new trial on the judge's minutes on the following grounds:

First. That the court erred in charging the jury, at the request of the defendant's counsel, that no force was used in removing the plaintiff from the defendant's street car.

Second. That the court erred in charging that the jury, in determining the question involved, might take into consideration the fact of the omission of the plaintiff to testify on the trial. Granted.

For former report, see 22 N. Y. Supp. 1118, mem.

W. H. Kenyon, for the motion.
J. C. & L. W. Churchill, opposed.

WRIGHT, J. While the plaintiff was standing on the defendant's car, being in a weak condition from the administration of anaesthetics by a physician, the president of the defendant, observing the plaintiff's condition, and believing it to be that of drunkenness, ordered the conductor to put him off. The conductor thereupon, in obedience to the command, ordered the plaintiff to leave the car, and put his hand on his arm. The plaintiff thereupon, with the assistance of the conductor and a friend, complied with the order. The witness Paige testified: "Callanen [the president of the defendant company] said: 'Put that man off. He is drunk.' He cried the same thing again. Then the conductor said to the plaintiff, 'You will have to get off,' and put his hand on his arm, and he and I helped him down into the street." The witness Keller testified: "Callanen ordered the plaintiff from the car, and the car was stopped, and the plaintiff was removed from the car." Callanen, a witness for the defense, testified: "I saw the plaintiff swaying and staggering on the platform. I hailed the conductor, and told him to put him off. No one was with the plaintiff at that time, caring for him. He was slipped off. He was perfectly helpless. The conductor just helped him off." A witness for the defense testified: "No force was used in the removal." "Force" is defined as "power dynamically considered, that is, in motion or action; constraining power; compulsion; strength directed to an end; unlawful violence, which may be implied, as in every trespass." Black, Law Dict. Is also defined as "strength or power exercised without law upon persons or things." Burrill, Law Dict. A mere unlawful direction by a conductor to passengers, unattended with menace, threats of violence, or other wrongful element, is not a thing upon which the implication of force can be predicated. But the plaintiff urges that the act of the conductor was both menace and active force. If the conductor's act was a menace,—an exhibition of a disposition to use physical strength to remove the plaintiff,—and the plaintiff was thereby put in fear of such physical strength, that act constituted

force. The question, therefore, is, was there any menace, or any use of actual physical strength, in the removal? In determining that fact we must consider, not only the act, but the intention that prompted it. The removal of the plaintiff was indisputably the result of the conductor's order, or of his order and the conductor's physical contact with him. The defendant contends that it was solely the result of the order, and that the question of force must be determined by the conductor's intention; and that the whole body of the evidence, considered together, shows conclusively that the plaintiff gave obedience to the conductor's order willingly and without the slightest physical compulsion; and that the sole act and intention of the conductor was to render such help to the plaintiff which he in his enfeebled condition greatly needed. That such, in fact, was the sole character and purpose of the conductor's act, is not conclusively apparent. The generous impulse and purpose of helpfulness may have acted jointly and in unison with the purpose and act of a compulsory character. The charitable purpose does not necessarily exclude compulsory purpose. The removal, though forcible, may have absolutely required for its accomplishment in a humane manner the helpfulness and assistance given by the conductor. This idea of helpfulness in the case raises an important element for the consideration of the jury on the question of damages. But here the inquiry is whether or not the proof on that point is essentially inconsistent with any degree of "constraining power;" for the amount of force exercised is not material for present consideration. If the physical contact of the conductor upon the plaintiff was in the slightest degree a "constraining power" in causing him to act,—to abandon his right of passage and leave the car,—it constituted force, in the legal acceptation of that term. Holding, as a matter of law, that said physical contact had no such constraining efficacy, was, in view of all the circumstances of the case, unwarranted; and the charge, in taking all questions in that regard from the consideration and determination by the jury, was an erroneous invasion of its province, for, though the facts are uncontroverted, yet, since sound minds might reasonably differ in regard to what inference should be drawn therefrom, a court is not warranted in determining that inference. Hart v. Bridge Co., 80 N. Y. 622. From the smallness of the verdict it is reasonably inferable that the error may have produced an effect prejudicial to the plaintiff, and for that error, therefore, he is entitled to a new trial.

The second ground of alleged error is untenable. Bleecker v. Johnston, 69 N. Y. 309; Whitney v. Town of Ticonderoga, 127 N. Y. 46, 27 N. E. 403. An order granting a new trial may be entered, with costs to abide the event.