with other portions of the section, such as the allowance for "making and serving a case," etc., and it seems plain that simply drawing the interrogatories is sufficient. On the other hand, the term fees ought not to have been allowed. The order of discontinuance was made January 30, 1896. It was the costs then taxable that the court decreed should be paid, and no fee for that term was allowable, as it was the first at which the case had been upon the calendar.

The order amending the certification of the county clerk should be modified so as to permit the insertion of Larocque's affidavits, without costs; the order resettling the order denying a retaxation should be reversed, and the motion granted as made, with costs; and the order denying the retaxation should be modified as above indicated, without costs.

(7 App. Div. 575)

McGUIRE v. HARTFORD FIRE INS. CO.

(Supreme Court, Appellate Division, Fourth Department. June 17, 1896.)

1. TRIAL BY COURT—MOTION FOR NEW TRIAL AND FOR DIRECTING A VERDICT.
Where plaintiff requests the direction of a verdict in his favor, and defendant moves for a nonsuit, and neither party requests that any fact be submitted to the jury, they thereby agree to submit the question of fact to the court.

2. INSURANCE—AGENTS—AUTHORITY TO WAIVE CONDITIONS OF POLICY.
The agent of an insurance company was authorized "to receive proposals for insurance; fix rates of premium; receive moneys; countersign, issue, and renew policies." The policies provided that they should be void if insured goods should be subject to chattel mortgage, unless otherwise provided by agreement indorsed thereon or added thereto, and that no agent should have power to waive any condition, except such as by the terms of the policy might be the subject of agreement indorsed thereon or added thereto. Held, that the agent had authority to agree to insure mortgaged goods by agreement indorsed on or added to the policy.

3. SAME—WAIVER BY AGENT DEALING WITH ILLITERATE PERSON.
Where an illiterate person applies to an insurance agent who has authority to issue policies on mortgaged goods, provided he indorse on or add to the policy a waiver of the restriction as to mortgaged property, and the agent agrees to make the insurance and indorse the waiver on the policy, and afterwards tells the insured that he has done so, and the policy is left in the custody of the agent until after loss, which occurred six days later, the knowledge of the agent that the insured property was subject to mortgage is imputable to the company, and it is liable for the loss.

4. SAME—PAROL WAIVER OF PROOFS OF LOSS.
An agent of an insurance company, who has power to adjust losses, may by parol waive formal proofs of loss.

5. SAME—RIGHT OF INSURED TO SUE—ASSIGNMENT BY MORTGAGEE.
In an action by a policy holder on the policy, in issuing which the agent waived the restriction against insuring mortgaged goods, plaintiff may give in evidence an assignment executed by the mortgagees of all rights that they might have in the insurance moneys, and authorizing him to sue therefor.

6. WITNESS—CROSS-EXAMINATION.
Where plaintiff in an action on an insurance policy covering mortgaged goods called defendant's agent who had issued the policy, merely to prove the authority of the agent, it is not proper cross-examination for

defendant to ask the agent if he did not tell plaintiff that he would have to take his chances as to the validity of the policy.

7. EVIDENCE—PRESUMPTIONS—FAILURE TO CALL WITNESS.

Where proofs of loss had been waived by a person assuming to act as agent of an insurance company, and the insured, in an action on the policy, introduced some evidence of such agency, but the company gave no evidence in relation thereto, it cannot urge the insufficiency of the evidence introduced by the insured, as its failure to produce evidence of the fact of the agency, which was within its exclusive possession, raises adverse presumption.

Action by John McGuire against the Hartford Fire Insurance Company. A verdict was directed in favor of plaintiff, and defendant moves for a new trial, on exceptions ordered to be heard in the appellate division in the first instance. Denied.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, WARD, and GREEN, JJ.

George P. Decker, for plaintiff.
Walter S. Hubbell, for defendant.

GREEN, J. This action was prosecuted to recover upon a policy of insurance issued by defendant, a foreign insurance company, to the plaintiff, on October 1, 1894. The insured property consisted principally of farming implements, grain, hay, and straw. The fire occurred on October 7th following the issue of the policy. It is alleged in the complaint, among other things, that the plaintiff was the only person having an interest in the loss, and entitled to maintain an action for its recovery. This allegation was established by proof. The defendant, by its answer, admits that Miller, who procured the insurance and issued the policy, was its resident agent, and possessed the usual authority of local agents of fire insurance companies in this state, but denies that he had any other or greater authority. The defendant also admits that, through said Miller, it issued its policy, "whereby it did insure the plaintiff against all loss or damage by fire." Alleges that the property was incumbered, at the time the policy was issued, by chattel mortgages, which rendered the policy void; that Miller informed the plaintiff that, if the defendant knew of the existence of such mortgages, it would refuse to issue a policy, and that such mortgages would void the policy, to all of which the plaintiff assented,—in other words, that the plaintiff agreed to pay his money for a void instrument. Defendant further alleges, in its answer, that the plaintiff fraudulently concealed—and requested Miller to conceal—from it the existence of such mortgages, that Miller did so, and that defendant did not discover the fact until after the fire, and was thereby deceived by the plaintiff and Miller into issuing the policy. No evidence was given in support of these defenses, and the existence of the mortgages was admitted.

The case discloses that at the conclusion of the evidence the defendant moved for a nonsuit, and dismissal of the complaint, which was denied. Plaintiff then moved for the direction of a verdict in his favor, which was granted, under exceptions taken, but defendant did not request that any question of fact should be submitted

to the jury. By this practice the parties treated the case as presenting questions of law only, and, as there was evidence to support the rulings of the court, it cannot, on this appeal, be successfully contended that there were questions of fact arising upon the evidence. Provost v. McEncroe, 102 N. Y. 650, 5 N. E. 795. It is well settled that when the defendant moves for a nonsuit, or rests his defense upon questions of law, and does not request to go to the jury, and his motion is denied, or the law held adversely to him, he is estopped from claiming upon appeal that there were questions of fact which should have been passed upon by the jury. Where the defendant moves for a nonsuit, and the plaintiff requests the court to direct a verdict in his favor, and neither party requests that any fact be submitted to the jury, this is virtually an agreement of the parties to submit the question of fact to the court; and, if there is any evidence to uphold his decision, it will be sustained. Dillon v. Cockcroft, 90 N. Y. 649; Sutter v. Vanderveer, 122 N. Y. 652, 25 N. E. 907; Kirtz v. Peck, 113 N. Y. 226, 21 N. E. 130; Robbins v. Insurance Co., 79 Hun, 119, 29 N. Y. Supp. 513.

It appears that Miller was empowered—

"To receive proposals for insurance; fix rates of premium; receive moneys; countersign, issue, and renew policies, when duly signed by the president, and attested by the secretary of the company, subject to the rules of the office, and the instructions which you may from time to time receive therefrom."

The policy contained this clause:

"This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void if the subject of insurance be personal property and be or become incumbered by chattel mortgage." Also: "This policy is made and accepted subject to the foregoing stipulations and conditions, together with such other provisions, agreements, or conditions as may be indorsed hereon or added hereto; and no officer, agent, or other representative of this company shall have power to waive any provision or condition of this policy, except such as, by the terms of this policy, may be the subject of agreement indorsed hereon or added hereto; and, as to such provisions, or conditions, no officer, agent, or representative shall have such power, or be deemed or held to have waived such provisions or conditions, unless such waiver, if any, shall be written upon or attached hereto."

The evident meaning of these provisions is that the agent may agree to insure chattel-mortgaged property, provided the evidence of such agreement be in writing, and that such writing be indorsed upon or added to the policy. In other words, the agent may waive the provision that the policy shall be void if the property is incumbered, provided he does so by writing indorsed upon or added to the policy. Miller testified:

"Q. You said you had no authority to issue policies on chattel-mortgaged property? A. I didn't say so. I issued policies, on the application of parties, without first reporting to the company. It was a matter of daily practice. I would issue a policy, and then report the issuance of the policy. I indorsed permits, and reported those after the indorsements were made, without asking the consent of my superior in each case."

It appears from the evidence that Miller had procured for the plaintiff a policy of insurance in the Aetna Company, upon the same property, or a portion of it, which policy was, in some form

or manner, made out for the benefit or protection of the mortgagees of that property. At least, the plaintiff, who was an illiterate man, supposed it was, as he confidently relied upon the statements of Miller, in whose good faith and honesty he implicitly reposed, and left the policy in his care. When that policy expired, Miller told the plaintiff that "the Aetna" would refuse to renew the policy on chattel-mortgaged property; and, as plaintiff was about to leave the office, Miller called him back, and said that "the Hartford" would "carry this all right." Plaintiff replied:

" 'All right. All I ask you to do is to take care of these two mortgages. That is all I have got to pay the money for. If they hadn't asked me, I wouldn't spend the money to get any insurance.' I told him I wanted them put in that policy. I told him about the other chattel mortgages. I didn't care nothing about them, because they hadn't asked me to do so. He said the insurance would begin right there; that the policy was all right that day, and would be good until I heard from him to the contrary. I had paid him five dollars. He didn't deliver me a policy that day. I never saw that policy until after the fire. I asked him before the fire if he wrote that policy up yet. He said my policy was all right."

On cross-examination, plaintiff testified that he did not read the policy that was given to him; that Miller agreed to put the mortgage clause on the policy when he wrote it; that Miller did not tell him that the Hartford would not insure chattel-mortgaged property, nor that he would have to take his chances on the policy; that Miller said he would write it in; that it was necessary to put it in; that the company would carry that policy with that clause written in it. "I told him what I had to have in the policy, of course. I knew it was necessary for me to have it written in. He agreed to do it. I supposed that this permission—the chattel-mortgage clause—had been written in the policy. He told me it was. I didn't look at the policy to see, for, if I had, I could not have told."

The case, then, we are called upon to decide upon this appeal, may be thus stated: An illiterate man makes application to an insurance agent having full power and authority to issue policies upon chattel-mortgaged property, provided he indorsed the agreement or waiver upon the policy, or added it thereto. An agreement having been entered into for the insurance of such property, a policy prepared, and a portion of the premium paid, the agent promised and agreed to make such indorsement or writing in or upon the policy, and afterwards told the insured he had done so. The insured, being unable to read, was practically in the position of a blind person. The policy was left in the custody of the agent until after the fire, which occurred six days later. No fault or laches is imputable to the insured. The question, then, is whether, under such circumstances, the insured must suffer for the fraud or negligence of the agent, or whether the company is responsible for his fraudulent acts or omissions. The fraud or mistake of an insurance agent, within the scope of his authority, will not enable his principal to avoid a contract of insurance, to the injury of the assured, who acted in good faith; and the fraud or mistake of the agent may be proved by parol evidence, notwithstanding the provisions of the policy. This is clear upon principle, and is abun-

dantly sustained by authority. Dowling v. Insurance Co., 168 Pa. St. 234, 31 Atl. 1087, and cases cited. The defendant cannot be released from its contract because the plaintiff, acting in good faith, accepted without examination the policy written by its agent. Having made a full and frank disclosure of the facts to the company's agent, who was empowered to write the policy, there was nothing to induce or warn the insured to have the policy read, unless it was the anticipation of fraud or mistake, and this could impose no duty in protection of the rights of plaintiff. Dowling v. Insurance Co., supra; Broadhead v. Insurance Co., 23 Hun, 397. "A party, whose duty it is to prepare a written contract, in pursuance of a previous agreement, who prepares one materially changing the terms of such previous agreement, and delivers it as in accordance therewith, commits a fraud which entitles the other party to relief according to the circumstances presented. The negligence of the plaintiff in not discovering the change and laches, in not sooner seeking relief, are questions which make the propriety of granting relief in a particular case discretionary. Policies of insurance are rarely examined by the insured. The same degree of vigilance and critical examination would not be expected or demanded as in case of some other instruments. It is found that the plaintiff did not in fact examine the policy until after the fire, when for the first time he was informed of the particular terms of this provision." Hay v. Insurance Co., 77 N. Y. 240.

The position taken by the defendant seems to be that the policy itself is a notification to the insured that if the existence of the incumbrance is not stated in writing indorsed upon the policy, or expressed therein, it shall be void, and that it is incumbent upon the assured to see that this is done before he accepts it, and, if he should rely solely upon the false assurance of the agent that he has executed the instrument according to the verbal understanding or agreement of the parties, he does so at his peril. However true this may be as a general proposition in courts of law, in an action brought to recover upon the instrument as written it cannot, as we have seen, be invoked as a defense to a suit in equity for its reformation. Nor can we perceive that it has any application to a case of the character here presented,—one that has such peculiar features, and which must necessarily be decided upon its special circumstances. We are unable to assent to it as a proposition of law, and much less as a principle of equity, that an insurance company may relieve itself from responsibility for the fraudulent representations of its agent by imposing upon a blind or illiterate person the obligation of seeing to it, at his peril, that the agent has fulfilled his duty to himself and to the company by making out the policy according to the terms and conditions agreed upon; in other words, that the insurance company may, by and through the false assurances of its agent, foist upon an illiterate person an instrument that is void at the instant of its creation. In O'Brien v. Society, 117 N. Y. 312, 22 N. E. 954; Id., 51 Hun, 495, 4 N. Y. Supp. 275,— insured could neither read nor write, and he warranted the truth of the statements in the application, whether written by him or not;

and yet the company was held responsible for the untrue and incorrect answers written by the agent, whether by mistake or fraudulently. And see Miller v. Insurance Co., 107 N. Y. 292, 14 N. E. 271, where the insured was a German, and understood the English language very imperfectly, and the company was held responsible. The agent was a general agent. Also,—where the application was filled out by the agent who solicited the insurance, and plaintiff was illiterate,—O'Rourke v. Insurance Co., 10 Misc. Rep. 405, 31 N. Y. Supp. 130. The plaintiff's claim is not, accurately speaking, based upon any waiver of a condition or provision of the policy; for it was expressly understood and agreed that the incumbrances should be expressed in writing upon the policy, and the agent promised to do so,—not to waive the requirement. In Van Schoick v. Insurance Co., 68 N. Y. 434, the condition was that, if the building insured is upon leased ground, it must be "expressed in this policy," otherwise the policy should be void. The fact that the building was upon leased ground was known to the agent, who was "in the business of soliciting and procuring insurance." It was held that the agent's knowledge was imputable to the company; that it was to be presumed that the defendant had overlooked the condition, and so had forgotten to express the fact in the policy, or that it waived the condition, or held itself estopped from setting it up, as to presume otherwise would be to impute a fraudulent purpose in issuing a policy known by it to be invalid. It should be observed, however, that it does not appear that there was any limitation or restriction imposed upon the power of the agent to waive any condition or provision of the policy. Still the court made certain observations that are very pertinent here:

"It was not that the defendant would not at all insure a building on leased lands. They did agree to take a risk upon it. But, to have it insured by them, the fact of its being upon leased land must be expressed to them. This was done. As evidence that it was done, it must, they say in the policy afterwards delivered, appear in writing on the policy. This is, like countersigning by an agent, but one of the forms of making the contract. That the policy was delivered and the premium received with full purpose of making a valid, obligatory contract is evidence that, through neglect or forgetfulness, one of the forms was not observed, or that it was waived by the parties."

Or, as in the present case, that it was fraudulently omitted, the insured being an illiterate person, and relying on the promise of the agent to make the indorsement. And the court, referring to Chase v. Insurance Co., 20 N. Y. 52, said that there the application contained a clause that the company would not be bound by the knowledge of the agent, and it was held that the company was not chargeable unless there was fraud. The case of Haight v. Insurance Co., 92 N. Y. 51, is to the point, and the opinion pertinent to this case:

"The defense rests upon the omission of any indorsement on the policy. The case of Woodruff v. Insurance Co., 83 N. Y. 133, is fatal to the defense, unless the effort of the appellant to point out a material distinction proves successful. It was there held that when a policy is issued upon an unoccupied house, the agent having knowledge of the fact, the defendant cannot be permitted to say it never assumed the risk. And in such case the stipulation requiring an indorsement of the company's consent must be deemed waived by the agent, and, through him, by the company. But in that case

it did not appear that the policy contained the provision present in this, which expressly denied to the agent any power to waive, modify, or strike out from the policy any of its printed conditions; and it is argued that this limitation of the agent's authority, plainly expressed in the policy, was thus brought to the knowledge of the insured, and the company was not bound, and could not be affected, by the knowledge and waiver of the agent. But the latter had authority to insure an unoccupied building, and could bind his company by so doing. There was no restraint upon his power to make the precise contract which he did make. Only the manner of his doing it was regulated." "The waiver of conditions at the inception of a policy grows out of the consideration that the company must have intended to make a valid contract, or else to perpetrate a fraud. Their agent had authority to insure the building, although unoccupied; and, having done so, the company must be held to have waived a condition essential to its validity, and cannot be permitted to receive and keep its fruits, and yet repudiate its existence."

The present case is much stronger than the one quoted, for in that case, we may infer, there was no express agreement to insure an unoccupied building, nor promise to state the fact by indorsement upon the policy, nor any fraud practiced upon an illiterate person. In Woodruff's Case the court remarked that in Walsh v. Insurance Co., 73 N. Y. 5, a distinction is taken between the power of an agent at the inception of a contract, and after it has taken effect. In Walsh's Case there was also a very stringent provision, making the procurer of the insurance the agent of the insurer, and not of the company, under any circumstances whatever, or in any transaction relating to the insurance. Upon applying for a renewal of the policy, the insurer informed the agent that he had sold the premises, and that his interest was as mortgagee, and the agent promised to "make it all right." The company was held chargeable. In Berry v. Insurance Co., 132 N. Y. 49, 30 N. E. 254, the agent's powers were greatly restricted by stringent provisions of the policy, and yet the knowledge of the agent respecting the title to the property was held imputable to the company. "The agents who issued the policy were general agents, having authority to make contracts without reference to the home office, and their power to waive conditions in the policy was co-existent with that of the company itself. Conditions which enter into the validity of the contract of insurance, at its inception, may be waived by agents, and are waived, if so intended, although they remain in the policy when delivered." To the same effect is Carpenter v. Insurance Co., 135 N. Y. 298, 31 N. E. 1015, although in that case no special restrictions appear. And see McNally v. Insurance Co., 137 N. Y. 389–396, 33 N. E. 475; Cross v. Insurance Co., 132 N. Y. 133, 30 N. E. 390; Bennett v. Insurance Co., 81 N. Y. 273; Robbins v. Insurance Co., 79 Hun, 117, 29 N. Y. Supp. 513. In Forward v. Insurance Co., 142 N. Y. 382, 37 N. E. 615; Id., 66 Hun, 546, 21 N. Y. Supp. 664,—the action was upon a standard policy, and three of the judges were of the opinion that the doctrine established by the former decisions of the court, referred to, were applicable to the facts and circumstances presented, notwithstanding the restrictions placed upon the powers of the agent; but the decision was placed upon another ground. In McGonigle v. Insurance Co., 168 Pa. St. 1, 31 Atl. 868, the action was upon a standard policy, similar to the

one adopted in this state. The agent was informed of the incumbrance, but failed to note it upon the policy, and the company was held liable. "That the policy contains conditions of a very stringent character must be admitted, but to say that those conditions, or any of them, can only be waived as prescribed in the policy, would be an assertion not warranted under the law." And see Gould v. Insurance Co., 134 Pa. St. 570–589, 19 Atl. 793.

It is clear, therefore, both upon principle and authority, that the knowledge of the agent is imputable to the company, and that the company must be held to have contracted, through its agent, to insure this property as incumbered, and to note the incumbrances upon the policy; and, having failed to make such indorsement, it must be precluded from setting up its own omission as a defense to the action. Or, to put it in another form, the company is chargeble in law for the intentional or negligent omission of its agent to make such indorsement, especially towards one who is unable to read, and relies upon the assurance given by the agent, and also leaves the policy in his custody. Gates v. Insurance Co., 10 Hun, 490; Chase v. Insurance Co., 14 Hun, 456; Miaghan v. Insurance Co., 24 Hun, 58; Pierce v. Insurance Co., 50 N. H. 297; Insurance Co. v. Gray (Kan. Sup.) 23 Pac. 637, 8 Lawy. Rep. Ann. 70, with notes; Insurance Co. v. Golden, 121 Ind. 524, 23 N. E. 503; Fishbeck v. Insurance Co., 54 Cal. 422; Insurance Co. v. Chipp, 93 Ill. 96; Insurance Co. v. Ruckman, 127 Ill. 364, 20 N. E. 77. "Defendant is estopped from setting up the condition, for the reason that the plaintiff was induced to forego a formal compliance with the condition by the fraudulent conduct of the person who negotiated the contract on behalf of the defendant. To give effect to the condition after such conduct would require the court to sanction a gross fraud on the plaintiff." McCabe v. Insurance Co., 14 Hun, 602.

Plaintiff offered in evidence an assignment, executed by two of the mortgagees, of all rights and claims that they might have in and to the insurance moneys, and empowering him to sue therefor. Objected to as not pleaded. The objection is not tenable. The contract, as executed, runs to the plaintiff, and he alone can support it. It appears that the plaintiff intended that the policy should be prepared in such a form that the mortgagees should be protected, or have some interest in the policy; but it was not distinctly agreed, so far as the case discloses, that the loss should be made payable directly to them, so that they could maintain an action at law. However that may be, since they have disclaimed any interest whatever in the policy, the right of the plaintiff to sue upon it is clear. Roussel v. Insurance Co., 41 N. Y. Super. Ct. 279; Luckey v. Gannon, 1 Sweeney, 17; Ennis v. Insurance Co., 3 Bosw. 517; Baltis v. Dobin, 67 Barb. 510; Winne v. Insurance Co., 91 N. Y. 192; Jackson v. Insurance Co., 5 Gray, 52; Ripley v. Insurance Co., 17 How. Prac. 444; Duncan v. Insurance Co., 129 N. Y. 237, 29 N. E. 76. If there had been a clear agreement that the loss, if any, should be payable to the mortgagees, or that the policy should be declared for their benefit, a reformation of the policy would be decreed at

their instance.    Jemison v. Insurance Co. (Iowa) 52 N. W. 185;
Esch v. Insurance Co., 78 Iowa, 334, 43 N. W. 229; Insurance Co.
v. Gueck, 130 Ill. 345, 23 N. E. 112.    So here the plaintiff would be
entitled to a reformation of the policy, if it were necessary, so as
to make it express the fact of the existence of the incumbrances.
Cone v. Insurance Co., 60 N. Y. 619; Bryce v. Insurance Co., 55
N. Y. 240; Van Tuyl v. Insurance Co., Id. 657; Maher v. Insur-
ance Co., 67 N. Y. 283; Van Schoick v. Insurance Co., 68 N. Y. 438;
Hay v. Insurance Co., 77. N. Y. 235; Insurance Co. v. Webster, 59
Pa. St. 227; Insurance Co. v. Gillett, 54 Md. 212, 219; McCormick
v. Insurance Co., 86 Cal. 260, 24 Pac. 1003.    Assured may declare
upon his policy as written, and, if the company avers and proves
a breach of a condition, the assured may prove a waiver of it, with-
out its being necessary to reform the policy.    Smith v. Insurance
Co., 49 Wis. 322, 5 N. W. 804.    And this is the effect of the adjudi-
cations in the courts of this state, and, putting the case upon the
ground of estoppel, it may be invoked in law as well as in equity.
And, having established a right of recovery, the plaintiff is not to
be thrown out of court merely because he has failed to pray for equi-
table relief, and be put to a new action for the same cause.    In such
a case as this, parol evidence is admissible, in a court of law, to
prove the fraud that creates the waiver or estoppel.    McNierney
v. Insurance Co., 48 Hun, 239–243; Baumgartel v. Insurance Co.,
61 Hun, 119, 15 N. Y. Supp. 573.

The plaintiff called Miller, the agent, simply to prove his com-
mission and authority.    On cross-examination he was asked if he
did not tell the plaintiff that he would have to take his chances as
to the validity of the policy if the indorsement was not made.    Ob-
jected to as not being proper on cross-examination, and objection
sustained.    The evident purpose of the question was to establish
the defense alleged in the answer,—that plaintiff agreed to accept
the policy without the indorsement, or that he requested Miller to
conceal the fact of the mortgages.    Defendant was at liberty to call
Miller, as its own witness, to contradict plaintiff's testimony, but
for obvious reasons it failed to do so.    The question, no doubt, was
perfectly proper; but the court had the right to exclude it on cross-
examination, and this was the ground of exclusion stated.    De-
fendant was still at liberty to prove the defense set up in the an-
swer, by calling its agent as its own witness.    The only question
put to witness by plaintiff and defendant on first direct and cross
examination related only to the authority of the agent.    As I have
said, the agent was called simply to prove the written authority.
The court exercised the discretion vested in it, and held that the
defendant must defer examination concerning matters of defense
until the case was with it for making its defense.    This objection
is, in my opinion, answered in Briggs v. Gardner, 60 Hun, 544, 15
N. Y. Supp. 335, where the court, in passing upon a similar ques-
tion, says:

"At the time these questions were propounded, the case was with the
plaintiff.    After the plaintiff rested, no effort was made on the part of de-
fendant's counsel to propound the questions already mentioned.    Presumably,

the justice would have allowed answers to have been given to them. Apparently, he excluded the answers at the time the questions were propounded, upon the idea that it was no part of the plaintiff's case; and, on the contrary, the evidence sought tended to support the defense, which had been set up in the answer, of the statute of limitations. We are not prepared to say that the justice erred in the exercise of his discretion, and we are of the opinion that we ought not to reverse the judgment because of the rulings made by the justice. Neil v. Thorn, 88 N. Y. 275."

Also citing Bedell v. Powell, 13 Barb. 183, where it was held that: "The order in which proof shall be received on a trial is in the discretion of the judge, and his decision cannot be reviewed on error or appeal."

See, also, Baylies, Trial Prac. 178, 179; Rap. Wit. § 246. We are of the opinion that this was so far in the discretion of the trial judge that the ruling, as made, presents no error.

Defendant claims there was no evidence of the authority of either Miller, Allen, or Arnold, who were agents of defendant company, to receive notice of proofs of loss, or to waive formal proofs, or to adjust or settle the loss, and that no estoppel is created against defendant by reason of their acts, conduct, or declarations. Arnold testified that for 16 years he was local agent for the defendant in other districts; that he had never before adjusted losses, nor been detailed on work outside of his own local work; that he was sent to plaintiff's place by Mr. Dewey, who was the special agent of defendant for this territory, and, so far as he knew, was the highest agent for the company in this territory, and his superior in the affairs of the company; and that he followed out any directions Dewey gave him, and went where he sent him. The defendant failed to give any evidence as to the authority of Dewey, or as to whether or not he was directed by the company to send Arnold to investigate the loss and adjust it. We will not undertake to rehearse all the testimony given, but we are satisfied that the evidence was sufficient to warrant the trial judge in drawing the inference, from all the circumstances presented, that Dewey was authorized by the company to send Arnold to adjust the loss. Defendant offered no evidence whatever, but remained silent, relying upon the inability of the plaintiff to prove essential facts that were peculiarly within its own knowledge and control. Plaintiff was obliged to rely upon two of the defendant's agents, whom he called, to make out a prima facie case; and the objection seems to be that he should have called other agents and officers of the company— located, as it is, outside of the state—to establish the strongest possible case, if he could. He was not bound to do that. It was sufficient to produce evidence from which a jury could reasonably and fairly infer, from all the circumstances, that these men were authorized by the company to proceed and adjust the loss. The evidence was sufficient in law to establish a prima facie case, and to call upon the defendant to contradict or explain it. Its failure to do so could be taken by the jury into consideration. Here we have four persons, who were the defendant's agents, engaged in taking part in the matter of adjusting plaintiff's loss; and although the consequence of their acts, conduct, and declarations will operate as a gross fraud upon an illiterate person, the defendant disclaims

all responsibility, on the ground that it never authorized them to commit a fraud. The court ought not, if possible to prevent it, to sanction such a defense. A result leading to such consequences should be avoided. Now, it appears that the company, through its agent Miller, contracted with an illiterate man; but the policy did not come into the actual possession of plaintiff until after the fire, and after the expiration of the 60 days. The insured never having received the policy, and being illiterate, it is questionable whether he may be charged with notice of these conditions. Insurance Co. v. Ruckman, 127 Ill. 364, 20 N. E. 77. The plaintiff relied on the defendant's contracting agent to inform him of the matters therein contained, and to guide him in the right direction to save his rights. It would seem that, under the peculiar circumstances presented in this case, the company was under some duty to give him information of the provisions of the policy, which the company will require him to observe for its protection. If, as we assume, the evidence was sufficient to establish the authority of Arnold and Dewey, there was also a recognition by the company of the acts and conduct of Miller and Allen. Every inference warranted by the evidence may be drawn against a party who, knowing the truth of the matter, and having the evidence in his possession, omits to produce it. Wylde v. Railroad Co., 53 N. Y. 156, 163. But here notice to produce was given. Defendant gave no evidence. And see Whitney v. Town of Ticonderoga, 127 N. Y. 40, 46, 27 N. E. 403. It seems that, if the case had gone to the jury, it would have been proper for the court to leave it to the jury to say whether, under the circumstances, the failure of the defendant to call Dewey, or to prove the extent of his authority, was suspicious, and to take that fact into consideration. See Bleecker v. Johnston, 69 N. Y. 309–313. The omission to produce material testimony, clearly within the party's reach, to explain an alleged fraudulent transaction, raises the presumption against the bona fides thereof. Bruce v. Kelly, 39 N. Y. Super. Ct. 27–38. Where the testimony is clearly within reach, an assumption that the omission to produce it was the result of knowledge or fear on the part of that party to the action with whom it lay to produce the testimony, and that his case could not be improved by the production thereof, is justified. Id. No presumption arises against a party not producing evidence, unless it appears that there is evidence which contradicts or explains the evidence adduced against him, and that such evidence is peculiarly within his knowledge, or power to produce. Fitzpatrick v. Woodruff, 47 N. Y. Super. Ct. 436. And see Flynn v. Railroad Co., 50 N. Y. Super. Ct. 375. The jury, in determining the question involved, may take into consideration the failure of a party to testify, or his omission to call an employé as a witness who might contradict or explain the testimony or inferences; and when a party knows the truth, and omits to speak, any inference warranted by the evidence should be indulged against him. When a party has made a prima facie case against another, and that other has possession and control of evidence, and peculiar means of repelling the proof or explaining it, we ought to accept the fact as

satisfactorily established.   Witcher v. Jones (Com. Pl.) 17 N. Y. Supp. 491; Watson v. Railway Co., 7 Misc. Rep. 562–565, 28 N. Y. Supp. 84.   And see, also, Ham v. Gilmore, 7 Misc. Rep. 596–600, 28 N. Y. Supp. 126; Schwier v. Railroad Co., 90 N. Y. 558–564; Clark v. Railroad Co., 40 Hun, 605; Schmidt v. Keehn (Sup.) 10 N. Y. Supp. 267; McGuire v. Joslyn, Id. 384; Ferry Co. v. Moore, 18 Abb. N. C. 106; Id., 102 N. Y. 667, mem., 6 N. E. 293, 1 Silvern. 52. In the case last cited, which was an action to recover moneys claimed to have been embezzled, the court stated, in substance, that the refusal of the defendant to be sworn as a witness, when confronted by a strong case of circumstantial evidence, goes far to overthrow the presumption of innocence to which he would otherwise be entitled, and which might solve a doubtful case in his favor.   This case is also reported in 102 N. Y. 607, mem., but this point is not stated in that report.   In the same case, at general term, which was reversed, the court said that, if any inference can be drawn against the defendant from his omission to testify or make explanations, only such as is warranted by the evidence given by the plaintiff will be indulged in.   32 Hun, 29–34.   The special term (which was affirmed by the court of appeals) stated the rule to be that "when a party knows the truth, and omits to speak, any inference warranted by the evidence should be indulged against him."   Ferry Co. v. Moore (N. Y. App.) 6 N. E. 293.   The omission of a party to testify to facts within his knowledge, in explanation of, or to control, adverse testimony, is a proper subject of consideration in equity, as well as at law. McDonough v. O'Neil, 113 Mass. 92.   When one party to an action has in his exclusive possession a knowledge of facts which would tend, if disclosed, to throw light upon the transactions which form the subject of controversy, his failure to offer them in evidence may afford presumptions against him.   Kirby v. Tallmadge, 160 U. S. 370, 16 Sup. Ct. 349.   The language of the court in Flynn v. Insurance Co., 78 N. Y. 575, may be appropriately applied here:

"Presumably, it was in the power of the company to produce him [the agent], and the company had the power to show precisely what authority Carey possessed; and, failing to do this, it cannot complain that adverse presumptions should be indulged. * * * We think that the onus was fairly cast upon the defendant to show the real truth, or take the consequences which the law infers from the omission."

Upon the evidence of the plaintiff, showing the relations to the defendant of their agents who negotiated with the plaintiff concerning an adjustment of the loss sustained under the policy, and their dealings with this plaintiff, after the fire, concerning the loss under the policy, together with the presumptions which, under the cases cited, the court had a right to indulge in against this defendant, by reason of its silence, and its omission, upon the trial, to produce the evidence peculiarly within its knowledge, we think the court was justified in finding as it did upon the question of the authority of the company's agents to adjust the loss of plaintiff.

If the court was right in that conclusion, it then becomes necessary to decide whether it was correct in its decision that agents of the company, clothed with the power of adjusting or settling loss,

may waive formal proofs of loss, and bind the company by parol waiver of the conditions of the policy as to furnishing proofs of loss. In Kansas and other states it is held that a resident local agent of a foreign insurance company, who is given full power to receive proposals of insurance, to fix rates of premium, to receive moneys, and to countersign, issue, and renew policies of insurance, is to be deemed a general agent of the company, and may, after loss, bind the company by a parol waiver of the conditions as to furnishing proofs of loss, notwithstanding the policy provides that agents of the company have no authority to waive, alter, modify, strike from the policy, or otherwise change, any of its conditions, except by specific agreement indorsed upon it, and signed by the agent making it; and other stringent restrictions upon agents' powers. Insurance Co. v. Munger, 49 Kan. 178, 30 Pac. 120. It was decided in Ide v. Insurance Co., 2 Biss. 333, Fed. Cas. No. 7,001, that a local agent may waive formal proofs of loss; that a statement that the proofs were "all right," and that the company would pay, amount to such waiver. In Insurance Co. v. Fay, 22 Mich. 467, it was declared that, when insured acts in accordance with instructions of the agent who issued the policy, he cannot be required to do more. "There was no reference in the policy to any separate adjusting agent, and nothing requiring the proofs to be furnished to such a person." Where notice and proofs of loss are required to be given to the company, notice to the local agent of a foreign company, issuing the policy, is good. Insurance Co. v. Crutchfield, 108 Ind. 518–526, 9 N. E. 458. Policy did not require notice to any specified officer or person, or at any specified office or place. Bush v. Westchester Ins. Co., 63 N. Y. 531, is cited by defendant as sustaining its contention that there was no evidence of Arnold's authority to act for defendant in the matter of the loss in question; but that case simply holds that the court erred in charging the jury that the local agent had authority to waive, as matter of law. The corporate name of the defendant in that case indicates a domestic corporation. The acts and declarations of an adjuster, in the general or apparent scope of his employment, are properly received in evidence, and bind the company. Bartlett v. Insurance Co., 77 Iowa, 155, 41 N. W. 601; Brink v. Insurance Co., 49 Vt. 442. If there be any evidence from which a waiver of proof may be inferred, it should be left with the jury. Insurance Co. v. Taylor, 73 Pa. St. 342; Thierolf v. Insurance Co., 110 Pa. St. 37, 20 Atl. 412. An offer of compromise by adjuster is evidence of waiver of proofs. Gould v. Insurance Co., 134 Pa. St. 570, 19 Atl. 793. "Prima facie, the insured is entitled to have his loss made good immediately upon its happening; and, when that loss appears to have been an honest one, we are not disposed to scan very strictly the evidence which tends to rebut a technical forfeiture of the right to payment." Insurance Co. v. Dougherty, 102 Pa. St. 568. Assuming that the agent's authority is sufficiently shown, offers of settlement are competent to prove sufficiency of proofs of loss. Townsend v. Insurance Co., 36 N. Y. Super. Ct. 172, affirmed in 56 N. Y. 655 (no opinion). And when an authorized agent took a statement of property

burned, and its value, and said, "That is all that is required," it was held that it was a question for the jury whether there was a waiver. Nickerson v. Nickerson, 80 Me. 100–106, 12 Atl. 880; Searle v. Insurance Co., 152 Mass. 263, 25 N. E. 290.   And see Dowling v. Insurance Co., 168 Pa. St. 234, 31 Atl. 1087; Gould v. Insurance Co., 134 Pa. St. 570, 19 Atl. 793; Little v. Insurance Co., 123 Mass. 380.   The case last cited is similar in some of its circumstances to the case at bar, and the court held that evidence was sufficient to authorize the finding that P. and T. acted as general agents, with the knowledge and approval of the company, having authority to settle losses.   Where authority in respect to adjusting losses has been shown in a general agent, it becomes a question for the jury whether such agent or adjuster, by his acts and statements, has waived or dispensed with proofs of loss, and thus raised an estoppel.   Underwood v. Insurance Co., 57 N. Y. 506; Lowry v. Insurance Co., 32 Hun, 329; Bishop v. Insurance Co., 130 N. Y. 488, 29 N. E. 844; Smith v. Insurance Co., 47 Hun, 38–40; Blossom v. Insurance Co., 64 N. Y. 165, 166.   If the agent who issued the policy takes advantage of the ignorance or inability of the insured to read, or misleads him in regard to making proofs of loss, the company ought not to be permitted to take advantage of such action.   Rivara v. Insurance Co., 62 Miss. 721.   If either party to this transaction must suffer by the acts or faults of the agents, it should be the defendant, whose agents they were.

Applying the rules of law established for the disposition of like cases to the evidence presented upon the trial of this action, we are of the opinion that the trial justice disposed of the questions submitted to him according to the rules thus established, and that his decision should be upheld.

The order denying the motion for a new trial should be affirmed, with costs, and the motion for a new trial denied, with costs, and judgment ordered for plaintiff upon the verdict.   All concurred.