AGNES WEBER, Appellant, *v.* GERMANIA FIRE INSURANCE COMPANY, Respondent.

*Insurance — loss of furniture purchased on the installment plan, and not fully paid for — what notice thereof concludes the company — waiver of service of formal proofs of loss.*

A statement made to the agent of a fire insurance company, during the course of negotiations resulting in the issue of a policy upon certain household furniture, that part of the furniture had been bought on the installment plan and had not been paid for in full, constitutes sufficient evidence of notice to the company as to the title of the property to require that the question of notice be submitted to the jury, and to justify the jury in finding that the agent should have sought further information on the subject; and the lapse of several months between the making of such statement and the issue of the policy does not, in the case of a continuous agency, as a matter of law, disconnect the notice from the insurance contract.

Proof that an agent, after a loss, told the insured to go home and buy some paper and put down every article he had in the house and the price opposite each one, and that the insured did so, and that the company retained the paper and its general adjuster subsequently investigated the loss, using the paper as a memorandum, presents a question for the jury whether the company did not thereby waive the service of the formal proofs of loss required by the policy.

APPEAL by the plaintiff, Agnes Weber, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Monroe on the 11th day of July, 1896,

upon the dismissal of her complaint directed by the court after a trial at the Monroe Circuit on the 15th day of November, 1895.

Action upon an insurance policy issued by the defendant January 24, 1894, to the plaintiff and her husband, George P. Weber, insuring the household furniture in their residence in Rochester, N. Y. The insured property was totally destroyed by fire April 1, 1894. The action was commenced on the 11th day of October, 1894, previous to which the husband assigned to the plaintiff his interest in the loss. The action was tried at the Monroe Circuit on the 15th of November, 1895, before a justice of this court and a jury. At the close of the plaintiff's testimony the counsel for the defendant moved for a nonsuit " upon the ground that the plaintiff has failed to show facts sufficient to constitute a cause of action, and that he has failed to establish the facts alleged in the complaint."

The motion was granted, to which the plaintiff excepted. The complaint was dismissed and the judgment entered to that effect against the plaintiff, with costs, from which judgment the plaintiff appeals.

Upon the trial it appeared that the house occupied by the insured had several rooms in which there was a good supply of furniture suitable for housekeeping; that the parties insured had been married a few weeks and that the plaintiff was acquainted with one Poppin, who was an insurance solicitor and agent for the defendant, and occupied the same office in Rochester with Duemplemann & Stahlbrodt, the general agents of the defendant.

Poppin, in July, 1893, met the plaintiff on the street and entered into conversation with her; she informed Poppin that she had been married. Poppin said : " If you are married I guess I will have to come down and give you a policy of insurance." The plaintiff said, " You can come down and see my husband about it." In a short time Poppin went to the house and the plaintiff showed him through the house. At this time the furniture destroyed by the fire was in the house. The plaintiff asked Poppin what she could get the property insured for; he said $1,000. Later on when the husband was at home Poppin went again to the house, and finding the husband, told him that he had come to make out a policy. The husband said that he could not afford it just then; that he was working only on half time and had got all he could do to live and pay his rent, and pay

the balance on the furniture that his wife had bought on the installment plan.    Poppin said he would wait thirty days.    Afterwards, and shortly before the policy was issued, the plaintiff's husband met Poppin in the street and told him to bring the policy for $1,000, which Poppin did, and upon its delivery to the husband the premium of $6 was paid.    The policy was in the standard form and contained the condition that it should be void if the interest of the insured be other than the unconditional and sole ownership of the property.    The policy covered the household furniture, useful and ornamental, which included furniture valued at $223.34 that had been purchased by the plaintiff of a Rochester firm upon the installment plan, payable at different periods, and all of which had been paid at the time of the insurance except $75, the firm reserving the title to the property until paid for.    At the time of the insurance there had been no default in the time of payment under this contract, and at the time of the trial the furniture had all been paid for.    The property in the house, except that purchased on the installment plan, seems to have belonged to the plaintiff and her husband, and was not incumbered.

The next morning, after the fire, the husband went to see the agent Duemplemann, and notified him of the fire, and he testified : "I told him I had a fire.    He says, 'All destroyed?'    I says, 'Yes.' He says, 'How much are you insured for?'    I says, 'A thousand dollars.'    He says, 'How much does your property amount to?'    I says, 'Between thirteen and fourteen hundred dollars.'    He says, 'I will tell you what to do; you go home and buy some legal cap paper and put down every article you had in the house and the price opposite each one.    When you get that done return it to me at the office.'"    The husband asked the agent for a duplicate policy, as his had been destroyed by fire, and the agent informed him that it was unnecessary, as the defendant had a duplicate in New York. The plaintiff and her husband made out the list as directed by the agent, and on the fourth of April the plaintiff delivered the completed list of property destroyed, which was an inventory giving a detailed description of the furniture in each room, with valuations attached to each article aggregating $1,376.79, to Mr. Duemplemann, and asked him if it was all right, and he said "yes," and she testifies : "I asked him what I ought to do now, and he said 'I

should go home. It would be all right. He would send it to New York.' He said I was to do nothing, and I went home."

In a few days one Kreuder, the general adjuster of the defendant, appeared in Rochester, and, in company with Poppin, went to the plaintiff's house, having the memorandum. of loss which she had delivered to the insurance agent, and interrogated the plaintiff and made investigations as to the fire. Before the expiration of sixty days from the time of the fire the husband .saw the agent, Stahl-brodt, and stated to him that the limit. of time, sixty days, had pretty nearly expired and he had not heard anything from the company, whereupon the agent said to him, "Weber, if you sent your papers to New York you will have your money either two or three' days before sixty, or two.or three days after sixty."

No other or different proofs of loss were furnished by the insured, nor were any required by the defendant. The policy contained the usual provision as to furnishing proofs of loss.

Some proof was given upon the trial as to the value of the property burned, but the proof was not completed owing to the suggestion of the court that that might be deferred until the other proof was in, and when the plaintiff rested her counsel stated that she did rest except as to the proof of the value of the property, whereupon she was nonsuited. The paper containing the statement of the loss was not returned to her nor any notice given her that it was defective in any respect.

*Frederick A. Mann*, for the appellant.

*George H. Harris*, for the respondent.

WARD, J.:

Two questions are pressed upon our consideration upon this review : *First*, whether there was evidence that should have been submitted to the jury as to whether the defendant, through its agent, at the time the policy of insurance was issued, had notice that the title to the property purchased upon the installment plan was not in the plaintiff or her husband ; and, *second*, whether the defendant had waived formal proofs of loss and had accepted the statement of loss furnished by the insured as sufficient.

The learned counsel for the defendant admitted upon the argu-

ment as to the first question that notice to Poppin (the agent), if sufficient, was notice to the defendant, but he insists that the evidence was insufficient to create such a notice. From the record before us it does not appear that the specific point was made upon the trial, in the motion for a nonsuit, that the proof disclosed that the insured had not title to a portion of the property insured. The point made was that the plaintiff had failed to show facts sufficient to constitute a cause of action, and was too general to call the attention of the court to this specific point. (*Pratt* v. *D. H. M. F. Ins. Co.*, 130 N. Y. 220; *Isham* v. *Davidson*, 52 id. 237; *Adams* v. *Greenwich Ins. Co.*, 70 id. 166.) Had the attention of the court been called to this matter an opportunity might have been given the plaintiff to give further proof upon the subject of notice, which would have been conclusive. But we are of opinion that sufficient evidence was given upon the subject of notice to have entitled the plaintiff to have the question of notice submitted to the jury. The agent was told, in effect, that a portion of the property had been purchased upon the installment plan by the wife, and had not been paid for. The jury might have found, under all the circumstances of the case, that this was sufficient, at least, to have required the agent to have sought further information upon the subject.

But the respondent insists that as this conversation was several months before the property was insured it cannot be regarded as notice of the condition existing at the time of the insurance. This information or notice was received by the agent in the course of negotiations that resulted in the contract of insurance, and it cannot be said, as a matter of law, that the lapse of time was sufficient to disconnect the notice from the insurance contract. The agency was continuous from the inception of the negotiation until its close. (*Cox* v. *Pearce*, 112 N. Y. 637; *Holden* v. *N. Y. & Erie Bank*, 72 id. 286; *McNally* v. *P. Ins. Co.*, 137 id. 389; *Robbins* v. *Springfield Fire Ins. Co.*, 149 id. 484; *Forward* v. *The Continental Ins. Co.*, 142 id. 382.)

There was sufficient evidence to go to the jury upon the question whether the defendant had waived the service of formal proofs of loss. Proofs were submitted, which, though not containing the formal requisites of the policy, were such as were required by the defendant's agent, and were retained by the company, and acted

upon by it without objection. The defendant investigated the loss through its agent, and apparently declined to pay the loss or any portion of it.

It is well settled that the service of proofs of loss may be waived by the insurer. (*Trippe* v. *P. F. Society*, 140 N. Y. 28, and cases cited; *McGuire* v. *Hartford Fire Ins. Co.*, 40 N. Y. Supp. 300; 7 App. Div. 575.)

The judgment should be reversed and a new trial ordered, with costs to abide event.

All concurred.

Judgment reversed and a new trial ordered, with costs to abide the event.