EUGENE GRAHAM, Appellant, *v.* THE HOME INSURANCE COMPANY
OF NEW YORK, Respondent.

Third Department, January 10, 1923.

**Insurance — fire insurance — policy covered two houses on farm while
occupied by owner and tenant — owner sold farm and transferred
policy to new owner with consent of insurer — insurer's agent was
informed at time of transfer that house would be occupied thereafter
by tenant — provision that premises should be occupied by owner was
waived by act of agent transferring policy with knowledge of facts.**

A warranty in a policy of fire insurance on two houses located on a farm, one of
which was occupied by a tenant and the other by the owner, that the premises
would be occupied by the " owner and tenant," will be deemed to have been
waived by the insurer and it is liable thereon, although at the time of the
burning of the house formerly occupied by the owner, it was then occupied by
a tenant, where it appears that the property was transferred by the original ·
owner and that the agent of the insurer was informed, when he consented to the
transfer of the policy, that the house would be occupied thereafter by a tenant.

APPEAL by the plaintiff, Eugene Graham, from a judgment
of the Supreme Court in favor of the defendant, entered in the
office of the clerk of the county of Cortland on the 10th day of
June, 1922, upon the dismissal of the complaint by direction of
the court at the close of the case after a trial before the court
and a jury.

The facts in this case are fully stated in the opinion by Mr. Justice
KILEY.

*L. R. Chase* [*Clayton R. Lusk* of counsel], for the appellant.

*Thomson, Woods & Woods* [*Thomas Woods* of counsel], for the
respondent.

HINMAN, J.:

It is our view that the warranty, " while occupied by owner
and tenant," must be construed not only presently but prospectively
covering the period of the policy. It is also our view that the
context does not indicate that " or " was intended for " and."
There were two dwellings on the farm. The former owner occupied
one and the tenant the other at the time of the issuance of the
policy. The respective rates for occupancy by the owner and the
tenant were different. If there had been no intervening renewal
of the policy for the benefit of a subsequent owner, we think there
could be no question but that the warranty was an enforcible
one and that if the former owner had abandoned occupancy, he
would have avoided the policy so far as it covered the premises
supposed to be occupied by the owner.

It is our opinion, however, that the situation was changed so far as the present owner was concerned. The reissuance of the policy to the plaintiff was in effect the issuance of a new policy. (2 Cooley Ins. 1063; *Hayes* v. *Saratoga & Washington Fire Ins. Co.*, 81 App. Div. 287.) Cooley says: " An assignment of a policy of insurance with the consent of the company to a purchaser of the interest of the insured constitutes a new contract between the assignee and the company." (Citing authorities.) At the time of the transfer in this case and preliminary to the issuance of this policy to the plaintiff, the plaintiff and his grantor went to the defendant's agent for the purpose of having the transfer of the policy made. The plaintiff told the agent that he had a home of his own and was not going to live on the premises. As was said in *Gray* v. *Germania Fire Ins. Co.* (155 N. Y. 180, 184): " It is well settled in this State that where an insurance company issues a policy, with full knowledge of facts which would render it void in its inception if its provisions were insisted upon, it will be presumed that it by mistake omitted to express the fact in the policy, waived the provision or held itself estopped from setting it up, as a contrary inference would impute to it a fraudulent intent to deliver and receive pay for an invalid instrument." (Citing authorities.)

The learned trial justice has held that this doctrine was not applicable on the ground that the warranty " while occupied by owner and tenant " was promissory. He erroneously assumed that the policy was valid in its inception under what was said further in *Gray* v. *Germania Fire Ins. Co.* (*supra*, 184), and within such authorities as *Ripley* v. *Ætna Ins. Co.* (30 N. Y. 136). The theory of the *Ripley* case so far as a promissory warranty is concerned seems to be that knowledge of present conditions by the agent does not interfere with the promissory warranty which looks to the future, because the agent would have the right to assume that the present condition of the insured would not affect his promise made in the policy thereafter to do differently. (*Van Schoick* v. *Niagara Fire Ins. Co.*, 68 N. Y. 434, 442.) Moreover, what was said in *Gray* v. *Germania Fire Ins. Co.* (*supra*, 184) to the effect that the defendant's policy in that case was valid in its inception and that if it became invalid it was by subsequent acts of the plaintiff in that case, has no application here, for the reason that this agent knew that the plaintiff was not in occupancy of these premises at the time and did not intend to occupy them. In other words, the policy was not even valid at its inception within the meaning of what was said in *Gray* v. *Germania Fire Ins. Co.* (*supra*), nor did the agent have any right to assume that the premises would be occupied by the owner in the future in

accordance with the policy, within what was said in the *Ripley* and *Van Schoick Cases* (*supra*).   Therefore, it seems to us that the general rule so well settled, quoted above, with reference to waiver, has application to the facts in this case and that the warranty in question was waived.   Since the defendant's motion for a non-suit was erroneously granted upon this issue, the judgment should be reversed upon the law and a new trial granted, with costs to the appellant to abide the event.

H. T. KELLOGG, Acting P. J., and VAN KIRK, J., concur; HAS-BROUCK, J., not sitting.

KILEY, J. (concurring in part:)

This is an action upon a fire insurance policy.   A dwelling house situate upon a small farm in the town of Homer, county of Cortland, this State, burned and was a total loss.   On the 25th day of June, 1910, this farm was owned by one Harry Brown.   On that date a fire insurance policy was issued by this defendant, covering the buildings upon said farm, in an amount not to exceed $3,050. Said policy, so far as applicable to the buildings insured, and out of which the controversy arose, contains the following provisions:

" I. $1,500 on 2 story shingle roofed frame building, with additions, foundations and all permanent fixtures, while occupied as a private family residence."   Then follows a provision for " $500 on household furniture," etc., not material here.   That in turn is followed by a description of another house on said farm as follows:

" $400 on 2 story shingle roofed frame building, with additions, foundations and all permanent fixtures, while occupied as a private family residence."

The next provision is for insurance on household furniture, etc., not material here, and following this are provisions numbered from 3 to 27, covering or omitting to cover different buildings and personal property on said farm, none of which is involved in this appeal.

A summing up of the total insurance is noted as $3,050.   This is followed by a clause to which the court below gave much significance, and reads as follows: " All situated on the farm owned by assured while occupied by *owner and tenant* in the Township of Homer, County of Cortland, State of New York."

Further: " This entire policy shall be void * * * in case of any fraud or false swearing by the insured touching any matter relating to this insurance or the subject thereof, whether before or after a loss. * * *; or if any change, other than by the death of an insured, take place in the interest, title, or possession of the subject of insurance (except change of occupants

without increase of hazard) whether by legal process or judgment or by voluntary act of the insured, or otherwise; or if this policy be assigned before a loss; * * * or if a building herein described, whether intended for occupancy by owner or tenant, be or become vacant or unoccupied and so remain for ten days. * * * In any matter relating to this insurance no person, unless duly authorized in writing, shall be deemed the agent of this company. * * * If fire occur the insured shall give immediate notice of any loss thereby in writing to this company * * *; and, within sixty days after the fire, unless such time is extended in writing by this company, shall render a statement to this company," etc. This refers to proofs of loss. " This company shall not be held to have waived any portion or condition of this policy or any forfeiture thereof by any requirement, act, or proceeding on its part relating to the appraisal or to any examination herein provided for; * * *. This policy is made and accepted subject to the foregoing stipulations and conditions, together with such other provisions, agreements, or conditions as may be indorsed hereon or added hereto, and no officer, agent, or other representative of this company shall have power to waive any provision or condition of this policy except such as by the terms of this policy may be the subject of agreement indorsed hereon added hereto, and as to such provisions and conditions no officer, agent or representative shall have such power or be deemed or held to have waived such provisions or conditions unless such waiver, if any, shall be written upon or attached hereto, nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured unless so written or attached." On the 5th day of December, 1910, the same year in which the policy was issued, Brown, the owner, sold and transferred title to said premises to this plaintiff. The above-described policy was transferred at the same time to the plaintiff, and defendant attached thereto written permission for such transfer, and continued the insurance in favor of the plaintiff. I gather from this record that said policy was issued for a term of three years, and the fact appears that before the expiration of the three years, and on January 12, 1913; the building (dwelling) on said premises, to which reference has been heretofore made, and insured for $1,500, was destroyed by fire. The defendant refused to pay the loss, and this action followed, resulting in a judgment in favor of defendant, from which this appeal was taken.

Upon the trial the defendant conceded that if plaintiff was entitled to recover, his damage was $1,500, the amount claimed in the complaint, and the amount for which the building destroyed

by fire was insured. The policy in question was signed as follows:
" E. S. Dalton, Agent, at Cortland, N. Y. E. G. Snow, Presi-
dent. A. M. Burtis, Secretary. Nelson H. Simmons, Manager.
Countersigned at Syracuse, N. Y. this 28th day of June, 1910."
It will be noted that the defendant, respondent, held Dalton
out to the public as its agent, representing it in the territory
where these premises were situated. This case went to trial
before the court with a jury, to which jury two specific ques-
tions of fact, only, were submitted, as follows: " First, were
proofs of loss as to the frame building called No. 1, under the
policy of the defendant, No. 42794, prepared at the office of
Charles F. Brown, in the City of Cortland, N. Y., on or about
January 15, 1913, and signed by the plaintiff and delivered to
Winfield Lacey? This question you will answer yes or no.
The second question is: Did the defendant, The Home Insurance
Company of New York, by or through Winfield Lacey, as adjuster
of the company, waive the filing with the company of proof of
loss of the destruction by fire on January 12, 1913, of the two
story, shingled roof, frame building, mentioned as Item No. 1 in
policy No. 42794 of the defendant, issued on or about June 25,
1910? This question you will also answer yes or no."

The first question was answered in the negative, and the second
question was answered in the affirmative, the court reserving
the other questions raised for his determination when he should
decide defendant's motion for nonsuit. While the court did
not make any findings of fact or conclusions of law, he did hand
down a memorandum, in which is disclosed the ground for granting
the defendant's motion for nonsuit. That was the single ground
that the words " while occupied by *owner and tenant* " in the
policy should be read as written by the defendant; that they,
in effect, constituted a warranty by the insured when the policy
was issued that such condition should obtain during the life of
the policy, and any interruption thereof constituted a breach that
would avoid the contract. It follows that the conclusion reached
must have been preceded by the mental determination that the
defendant had not waived, by consent, or otherwise, the provision
which he found existed, namely, that there must be a continuous
occupancy by the landlord. Other questions were litigated, and
it is presumed that those were found in favor of the plaintiff, except
the first question submitted to the jury. The fire and extent of
the loss were conceded as alleged by the plaintiff; that notice of
the fire was given to the agent, Dalton, by telephone, without
delay, after the fire. The notice was not in writing, but was
effectual as defendant sent an adjuster to examine and investigate,

who did examine and investigate; the purpose of such notice was fulfilled.

As to the filing or serving proofs of loss, the jury found adversely to the plaintiff, as aforesaid. It is well to recall the circumstances: Plaintiff was called to the local agent's office to meet the adjuster; plaintiff swears they talked about proofs of loss, and if they did not the evidence does not show that any other subject was discussed. Plaintiff swears that he told them that he did not know how to make out proofs of loss, words to that effect; that first he signed a paper, and swore to it, which he supposed was the proofs of loss, and then the question of loss on personal property was discussed, and that upon a blank furnished at that time at that office, a lady who was with him made the entries and amounts of personal property which he claimed was in the house. Defendant admits and gives affirmative evidence that the last paper was made out as testified to by the plaintiff. Plaintiff swears that he delivered both papers to the adjuster. Defendant admits upon the stand the delivery of the last-mentioned paper. Blanks for proofs of loss are always with the agent, and to be had when the occasion for their use arises. The occasion was right, the facilities were present, and the proper representatives of defendant were at the office when plaintiff arrived. Defendant's denial that more than one paper was ever delivered to its representative makes interesting the following paragraph of its answer: " The defendant further alleges, upon information and belief, that after said fire occurred, for the purpose of cheating and defrauding this defendant, the plaintiff made and delivered to this defendant *various written papers*, signed by him, and sworn to by the plaintiff, touching various matters relating to said insurance and the subject thereof," etc. So far as this allegation is concerned, the defendant is speaking through its adjuster, and so far as this record shows, is speaking of the time and place when, and where, plaintiff says he delivered his alleged proofs of loss. A finding by the jury that, on the request or suggestion of the adjuster for proofs of loss, two papers were made out and delivered to the adjuster would have been sustained by the evidence; and following that finding with a finding that such papers constituted all of the proofs of loss called for, would find support in the evidence. The jury did find (second specific question submitted) that what defendant's representatives did at the meeting in question was a waiver of any further requirement for proofs of loss. Such finding was not disturbed by the trial court in reaching his decision. Before the fire plaintiff sold the land upon which the small house insured for $400 was situated. Such sale was not reported to the insurance company. It is presumed

that the court found that this did not avoid the policy as to the other house. (*Donley* v. *Glens Falls Ins. Co.*, 184 N. Y. 107; *Knowles* v. *American Ins. Co. of Boston*, 66 Hun, 220; affd., without opinion, 142 N. Y. 641.) Richards on Insurance (3d ed. p. 153) asserts: "A sale of one of several buildings will defeat the insurance only as to the one sold." In the absence of any finding, the defense that plaintiff was guilty of any fraud, or that he committed the crime of arson, is presumed to have been resolved in favor of the plaintiff; an adverse finding would not find support in the evidence. It does appear that he was tried on the latter charge, which must have included the former, and was acquitted by a jury. It has been observed above that the court must have determined, although there is no evidence of it in the memoranda, that defendant did not waive the force given to the words "landlord and tenant," and as an alternative might have found that such provision could not have been waived by the agent. No criticism is intended because of the absence of findings. Findings, in the case of nonsuit, are not required. (Code Civ. Proc. § 1021; now Civ. Prac. Act, § 441.) We approach the reasons for the decision of the trial court with the uncertainty as to what was his mental determination thereon. The condition creating this uncertainty is not attributable, as error, to any one. The conditions precedent are found in the clauses describing the two houses insured, which are hereinbefore set forth in full, and the only restrictions contained therein are that each is "occupied as a private family residence." Some twenty-four or twenty-five clauses intervene between the above provisions and the clause containing the words "owner and tenant." Said clause is isolated farther from the insurance clause by a dotted line preceding it and running across the whole width of the page. To repeat, that clause reads as follows: "All situated on the farm owned by assured while occupied by owner and tenant in the Township of Homer, County of Cortland, State of New York." So far as the vital clause in this policy lays down any restriction, it was complied with. The house which was destroyed by fire was "occupied as a private family residence." This policy nowhere states that either building must be occupied by a landlord, except what is said in the clause now under consideration. That clause, read with what had gone before, is ambiguous, and in more particulars than contended for by the appellant. What does the word "while" mean read in the light of all the circumstances? It is an adverb, and its meaning as such is illustrated in Webster's Dictionary as follows: "While I write, you sleep." This denotes a present condition. It speaks of the condition obtaining at the time the policy was issued. The

policy nowhere says that a policy would not be issued on buildings wholly occupied by tenants. Two houses do not change the significance of such omission. It is declaratory of the then existing condition of occupancy, and as such it had a perfectly legal purpose. That purpose was the effect upon rates on account of increase or decrease of hazard. Rates are no part of the policy; they are the subject of an outside bargain and sale as to how much shall be paid for the insurance. It matters not that the amounts to be charged and paid are fixed beforehand by the boards or the agreement between companies. It is a mere detail and functions only when the hazard places the risk in one category or the other. If this reasoning prevails, it would not make any difference if those buildings were occupied by either landlords or tenants so long as the proper rates were charged and paid. Considered from this point of view, the phrase " owner and tenant " written into the policy by the agent issuing it, is an ambiguity, and this word " or " should have been written in the place where the " and " appears. Those ambiguities are found in a policy made up, issued and delivered by this defendant to plaintiff's grantor. This ambiguity in the contract in which it appears should not advantage the defendant; it should be construed in favor of the plaintiff. (*Michael* v. *Prussian Nat. Ins. Co.*, 171 N. Y. 25; *Miller* v. *Danby Co-operative Fire Ins. Co.*, 190 App. Div. 794, and cases cited.) Assuming that the clause should be given the force and vitality contended for it by the respondent, the next proposition is, was it waived by it? The evidence upon which the appellant contends that the affirmative should prevail is uncontradicted, and is substantially as follows: The plaintiff and his grantor, at the time of the transfer, went to the office of defendant's agent, Dalton, in Cortland; they went there for the purpose of having a transfer of the policy made to plaintiff; plaintiff told the agent that he had a home of his own and was not going to live on the premises; the policy was left in the possession of the agent, Dalton, with the information plaintiff had given him. There can be no contradiction of the fact that these men went there for the purpose of making a legal transfer of the policy in accordance with its terms so that the policy should continue as security against loss by fire to the new owner. It was returned with the rider that on its face says the purpose was effectuated. The plaintiff cannot be criticised because he did not go somewhere else; he was ready; there was nowhere else he could go. This policy does not contain an address of a single officer or representative of the defendant, except the address of the agent, Dalton. It appears that it was countersigned, when issued at Syracuse, but it does not tell by whom nor where

in Syracuse it was countersigned; that statement printed on the policy is not signed by any one. Under such circumstances the evidence justifies the conclusion that the agent represented the principal, or had power to represent it so far as any of the matters here are concerned. This policy does not differ in any respect, so far as it affects the appellant, from any of the standard policies. It is issued by the agent on the application of the assured, and always countersigned by the company. Such countersigning means approval. It is then delivered to the assured and the agent collects and continues to collect the premiums; all requests with reference to it are made to him. He has power to waive the conditions incidental to the assured's interest. Such acts are within the ordinary scope of the business intrusted to him. (*Walsh* v. *Hartford Fire Ins. Co.*, 73 N. Y. 5; *McClelland* v. *Mutual Life Ins. Co.*, 217 id. 336; *Whipple* v. *Prudential Ins. Co.*, 222 id. 39; *Bodine* v. *Exchange Fire Ins. Co.*, 51 id. 117; *Van Schoick* v. *Niagara Fire Ins. Co.*, 68 id. 434; *Carpenter* v. *G. A. Ins. Co.*, 135 id. 298.) This authority also bears upon the question of proofs of loss as appears from the evidence in the case at bar. (*Robbins* v. *Springfield Fire Ins. Co.*, 149 N. Y. 477; *Houlden* v. *Farmers' Alliance Co-op. Fire Ins. Co.*, 188 App. Div. 734; *Patridge* v. *Commercial Fire Ins. Co.*, 17 Hun, 95; *Manchester* v. *Guardian Assurance Co.*, 151 N. Y. 88; *Weber* v. *Germania Fire Ins. Co.*, 16 App. Div. 596; *Ruggles* v. *American Central Ins. Co.*, 114 N. Y. 415.)

Defendant is chargeable with knowledge of the agent. (*Forward* v. *Continental Ins. Co.*, 142 N. Y. 382; *Berry* v. *American Central Ins. Co.*, 132 id. 49.)

Waiver is a question of fact for the jury. (*McNally* v. *Phœnix Ins. Co.*, 137 N. Y. 389.)

I am not unaware of the omission, on the part of the plaintiff, to ask to go to the jury on that question, but that is not an excuse why the question should not receive consideration from the trier of the facts. It was made an issue by the pleadings and upon the trial, and it is clear that the question of waiver, alleged to have resulted from what took place in the office of the agent, Brown, when the adjuster and appellant were present, was not considered in reaching a conclusion upon the evidence in this case. That is evidenced by the court's memorandum.

Justice will be best served by a new trial in this case. The judgment should be reversed on the law and the facts, with costs to appellant to abide the event.

Judgment reversed on the law and a new trial granted, with costs to the appellant to abide the event.