TITLE GUARANTY AND SURETY COMPANY *vs.* FRED
T. LEY AND COMPANY, INC.

Suffolk. January 12, 1921. — March 7, 1921.

Present: RUGG, C. J., DE COURCY, CROSBY, PIERCE, & JENNEY, JJ.

*Practice, Civil,* Auditor's report, Finding by judge, Exceptions, Requests and rulings. *Surety. Bond.*

Where an action at law is heard by a judge without a jury upon evidence which includes the report of an auditor whose report states evidence in connection with certain findings but does not state that the report includes all the evidence upon which such findings were based, the report is *prima facie* evidence and the findings must stand unless either in the report or outside of it there is evidence to control them.

A construction company in its application to a surety company to become surety upon certain bonds agreed "to pay in advance a premium or fees hereinafter agreed upon, namely . . . dollars annually, and an additional premium to be adjusted and paid upon the completion of the contract, based on any increase of the original contract price, such annual payments to be made until the undersigned [the defendant] shall serve upon said Company at its Home Office in the City of Scranton, Pennsylvania, competent written evidence of its discharge from such suretyship and all liability by reason thereof." In an action by the surety company against the construction company to recover premiums upon the bonds, it appeared that the defendant had not served upon the plaintiff the written evidence required by the application. It also appeared that the plaintiff had not relied upon that method of determining the time when the obligation of suretyship and the duty to pay premiums ceased but had conducted independent investigations for that purpose, and, relying upon such investigations, had marked the contracts "cancelled" and had released reserves which it had been required by law to maintain because of the contracts. *Held,* that findings, that the plaintiff had waived its right to continue to collect premiums until it should receive written notice of the completion of the contract and also its right to collect premiums after the date of actual completion of the work, were not unwarranted.

Findings of fact made by a judge who heard an action at law without a jury are not open for revision in this court if there was any evidence to support them.

In an action at law no exception lies to the denial of requests for findings of fact.

CONTRACT with a declaration in eleven counts, counts numbered one to ten inclusive being for premiums alleged to be due according to the provisions of contracts under which the plaintiff acted as surety on bonds given by the defendant to different obligees for the faithful performance of construction contracts,

and the last count being upon an account annexed which included items as to all such premiums. Writ dated November 20, 1915.

In the Superior Court the action was referred to an auditor and later was heard upon the auditor's report and other evidence by *McLaughlin*, J., without a jury. Material evidence and findings of the auditor and of the judge are described in the opinion. At the close of the evidence, the plaintiff requested the judge to rule as follows:

"13. On all the evidence I find as a matter of law, that the plaintiff has not waived its right to claim from the defendant premiums by reason of contracts of suretyship entered into by it as set forth in its declaration, until the defendant shall have furnished it 'competent written evidence of its discharge from such suretyship and all liability by reason thereof.'"

"20. Date of the physical completion of the work does not determine the period for which premium is payable."

The judge refused to give the request numbered 13, and, upon that numbered 20, ruled as follows : "As to request number 20: that the date of the physical completion of the work does not by the terms of the contract as originally made determine the period for which the premium is payable is granted; but that the date of the physical completion may not determine such period, if the parties subsequently agree upon such date as the point of time when the payment of premiums shall cease, is refused," and found for the plaintiff in the sum of $6,657.76.

The plaintiff alleged exceptions.

*H. R. Bygrave*, for the plaintiff.

*R. S. Spooner*, for the defendant.

CROSBY, J. This is an action of contract to recover premiums, alleged to be due the plaintiff for acting as surety on bonds, given by the defendant to different obligees, for the faithful performance of construction contracts entered into by the defendant with such obligees. The action was heard by a judge without a jury. The declaration contains eleven counts, the last being upon an account annexed which includes the amounts of premiums alleged to be due under counts one to ten inclusive. The record recites that counts three, five and eight were waived.

The contracts described in each count are referred to in the

applications for bonds signed by the defendant and include in each instance the following printed provisions: "In consideration of the Title Guaranty & Surety Company becoming surety on the bond herein applied for, the undersigned does hereby covenant and agree: —

"First.  To pay in advance a premium or fees hereinafter agreed upon, namely . . . dollars annually, and an additional premium to be adjusted and paid upon the completion of the contract, based on any increase of the original contract price, such annual payments to be made until the undersigned shall serve upon said Company at its Home Office in the City of Scranton, Pennsylvania, competent written evidence of its discharge from such suretyship and all liability by reason thereof;"—the blank space in each application being filled in with the amount of the advance premium.  There was evidence that the original premiums, and any additional premiums were to be computed on the basis of one half of one per cent of the contract price.  The plaintiff received in each case the advance premium.  It seeks to recover additional sums as premiums on two grounds, namely: (1) because the defendant never has served upon the plaintiff at its home office in Scranton, Pennsylvania, competent written evidence of its discharge from such suretyship and all liability by reason thereof; and (2) that on all the contracts in question the amounts, paid to the defendant by the obligees of the bonds for work under the contracts for which the bonds were given, were in excess of the contract price of the work as stated by the defendant in its application to the plaintiff to become surety on its bond.  It appears from the record that the defendant never served written notice upon the plaintiff at its home office of its discharge from suretyship on any of the bonds in question; and that in each case referred to in the several counts the amount received by the defendant under the contracts with the different obligees named in the bonds was in excess of the contract price as stated by the defendant in its application; and that, to inquiries by the plaintiff, the defendant replied that there had been no increase in the contract price.

The case was referred to an auditor, who found that in the cases under counts two, four, six and seven, there was no controversy between the parties that the work was completed within

one year from the date of the contracts; nor as to the amounts paid by the obligees to the defendant for work done. In the case under the first count the defendant made a contract with the New York, New Haven, and Hartford Railroad Company, dated April 26, 1911, to perform certain construction work for the company at Cos Cob, Connecticut. The contract provided that the work should be completed within one hundred working days from October 15, 1911. It also provided that the defendant would indemnify the railroad company against all claims for damages on account of injury to the persons therein referred to, during the progress of the work. The auditor found that the premiums should be computed on the actual cost of the work instead of on the contract price as set out in the applications made by the defendant to the plaintiff to become surety. While there was evidence that the plaintiff had waived the right to have the premiums computed on the actual cost of the work, the auditor did not so find, but found that in such cases the plaintiff was entitled to have one premium computed at the rate of one half of one per cent on the amount received by the defendant for the work done under the contract, for the faithful performance of which the plaintiff was obligated as surety; and in the cases where the work was not completed within one year after the date of the application, that the plaintiff was entitled to additional premiums from one year after such date to the date of the completion of the work, to be computed at the same rate for each full year, the premium for a fraction of a year to be a *pro rata* portion of a full year's premium. The auditor further found "that the plaintiff has waived the right to collect premiums from the defendant until the defendant gives it written notice of its discharge from liability at its home office in Scranton, Pennsylvania, and also has waived its right to collect premiums after the date of the completion of the work on the contracts for the faithful performance of which the plaintiff was surety."

It appeared that the defendant made its applications through the plaintiff's local agents, Oppenheimer and Field, at Springfield in this Commonwealth; that the business between it and the plaintiff was conducted through the office of G. R. Griffin and Company, the plaintiff's general agents in Boston; that it was the practice for the plaintiff frequently to send to G. R. Griffin and Com-

pany a printed form having several questions thereon as to the progress of the defendant's work under its contract with the plaintiff, whether it was completed or not, and, if completed, when, and whether the contract price had been increased or not. These forms were transmitted by G. R. Griffin and Company to Oppenheimer and Field, who interviewed some one in the defendant's office in Springfield as to the questions asked, filled in the answers received, signed the paper and returned it to G. R. Griffin and Company, who in turn sent it to the plaintiff. It further appeared that when the plaintiff was thus advised or was notified by letter from G. R. Griffin and Company that the defendant had completed a contract, it cancelled its bond and released the reserve it was required by law to maintain against its liability on its bond, closed its account as to that bond with the defendant, sent no more bills to G. R. Griffin and Company to be transmitted to the defendant through Oppenheimer and Field, stamped the word "Cancelled" on the application, and wrote to G. R. Griffin and Company that it had cancelled the bond and to note the fact on its records. "This practice was continued during the entire time the parties did business together, the defendant never notifying the plaintiff of its discharge for [from] liability as both the old and the new forms of applications required, for the forms were exactly alike in that respect." In addition to the finding that the plaintiff has waived any right to premiums after the end of one year from the dates of the applications in the cases of counts two, four, six and seven, it is found that the plaintiff waived any right to premiums after the dates of the completion of the work in the cases under counts one, nine and ten.

The case was heard by a judge without a jury, and evidence other than the auditor's report was introduced. Although the auditor in connection with the findings reports certain evidence, it does not appear that the report includes all the evidence upon which they are based. In these circumstances the report is *prima facie* evidence and the findings must stand unless either in the report or outside of it there is evidence to control them. *Anderson* v. *Metropolitan Stock Exchange,* 191 Mass. 117. *Wakefield* v. *American Surety Co.* 209 Mass. 173. *Barrell* v. *Paine,* 236 Mass. 157, 162.

The plaintiff excepted to the refusal of the judge to make

fourteen rulings. All the material evidence before the judge, so far as it relates to the exceptions, is recited in the auditor's report. The judge found, as did the auditor, that in each case the plaintiff waived its right to collect premiums until written notice was given of the completion of the contracts; and also, to collect premiums after the date of the completion of the work. In connection with these findings the judge states: "Whether the plaintiff was prompted to this by its desire to withdraw the reserve, which, on entering into each contract of suretyship, it was obliged by law to maintain during the existence of its liability under each bond, and which reserve it did withdraw in each case, as soon as it ascertained that the work was completed, or whether it deemed that evidence of discharge from its suretyship and all liability thereunder, obtained through its own investigation, would be more reliable and satisfactory than such written evidence, as was provided for in the application, I am satisfied that the plaintiff impliedly adopted as the criterion for fixing the time when all liability by reason of its suretyship had ended and the payment of premiums should cease, its own determination, based on its own investigation, that the work was actually completed, and completed in the sense, I assume, that the defendant had fully, exactly, and in all respects performed its contract. . . . But I think it is fairly and reasonably to be inferred, and I do infer from the settled facts, and from all the evidence in the case, that the purpose and intent of the plaintiff corporation to treat as nugatory the written provision upon which it now relies, and to substitute for it another method for determining when its liability ceased, was known to the defendant, and that the plaintiff corporation intended that the defendant should be governed by the assumption that on the cancellation of the bond it should be under no further liability to the plaintiff for annual premiums."

The judge stated that upon the evidence he saw no reason to differ from the auditor, and found for the plaintiff on counts one, two, four, six, seven, nine and ten in the same amounts for which the auditor found, except that he added interest to the date of the finding. The findings of fact made by the judge upon those of the auditor are not open to revision in this court. While it appeared that in each case the amounts received by the defendant

were in excess of the contract price as stated in its application to the plaintiff, the amounts so stated in the application were necessarily estimates. It also appeared that the defendant stated, in reply to inquiries from the plaintiff, that there had been no increase in the contract prices; but the evidence showed that there were controversies as to what work was covered by the contracts, and as to what was done under separate and independent contracts, which resulted in a disagreement between the parties as to the cost of the work upon which the premiums were to be paid. There is no evidence that these statements were made by the defendant with the intent actually to deceive the plaintiff, and it is expressly stated in the record that "neither the auditor nor the court found fraud or bad faith in the making of such statements."

We are of opinion that, upon the reported evidence and the proper inferences to be drawn therefrom, it could have been found that the plaintiff did not rely on the statements so made by the defendant. The findings that the plaintiff waived its right to collect premiums until it received written notice of the completion of the contract, and waived its right to collect premiums after the date of the actual completion of the work, were not unwarranted; it is a reasonable inference from the evidence that the plaintiff determined these facts through its own independent investigation and "impliedly adopted as the criterion for fixing the time when all liability by reason of its suretyship had ended and the payment of premiums should cease, its own determination, based on its own investigation, that the work was actually completed, and . . . that the defendant had fully, exactly, and in all respects performed its contract." Whether the plaintiff waived its rights under the application, as found by the judge, was a question of fact. *McGrath* v. *Quinn*, 218 Mass. 27. It could be proved by express declaration or by such a course of acts and conduct as to induce a belief that it was intended to be waived. *Farlow* v. *Ellis*, 15 Gray, 229. Waiver may be established by direct evidence or it can be inferred from the circumstances, which in the case at bar include the course of dealing between the parties after the plaintiff became obligated as surety on the bonds and its acts and conduct thereafter. *Holdsworth* v. *Tucker*, 143 Mass. 369. *Eaton* v. *Globe & Rutgers Fire Ins. Co.* 227 Mass. 354, 364.

There was sufficient evidence in the acts and conduct of the plaintiff to warrant a finding of waiver as claimed by the defendant. *Little* v. *Phœnix* Ins. Co. 123 Mass. 380.

Many of the plaintiff's requests were for findings of fact. , It is well settled that in an action at law the court is not required to make findings of fact even if requested by the parties to do so. *Lowell* v. *Bickford,* 201 Mass. 543, 545. *Davis* v. *Boston Elevated Railway,* 235 Mass. 482, 494. As it could not properly have been ruled that the plaintiff had not waived its right to claim from the defendant premiums by reason of the contracts of suretyship until the defendant furnished it with "competent written evidence of its discharge from such suretyship and all liability by reason thereof," the plaintiff's thirteenth request, for reasons previously stated, was rightly refused. The twentieth request for ruling was adopted with the following addition: "but that the date of the physical completion may not determine such period, if the parties subsequently agree upon such date as the point of time when the payment of premiums shall cease, is refused." The request adopted as so modified was correct. The remaining requests are for findings of fact, and need not be considered.

As we perceive no error of law in the conduct of the trial, the entry must be

*Exceptions overruled.*