MOORE v. FOSS & CO., Inc.

District Court, D. Massachusetts. March 25, 1927.

No. 1436.

1. Sales ⟜89—Buyer's cancellation of letter of credit, and notice that it would not pay for future goods until examined, held not cancellation°of contract, but merely proposal to modify.

Buyer's cancellation of letter of credit, and notifying seller that thereafter it would not pay for any goods until examined, held not an effective cancellation of existing contract, but only a proposal to modify it, which modification was effected when acquiesced in by seller.

2. Sales ⟜178(3)—Buyer of goods entitled to examine before payment has reasonable time therefor, though retention after reasonable time without rejection constitutes acceptance (G. L. Mass. c. 106, §§ 36, 37).

Under G. L. Mass. c. 106, §§ 36, 37, buyer, entitled to examine goods before being required to pay, will not be held to have accepted until afforded a reasonable opportunity for examination, though retention of goods after lapse of reasonable time, without intimation to seller that he has rejected them, will be deemed an acceptance.

**3. Sales ⊙⟶178(3)—Buyer's delay in examining shipment of wool waste, for two months in one case and more than six in another, held "acceptance," under statute (G. L. Mass. c. 106, §§ 36, 37).**

Where three shipments of wool waste delivered in June were examined, one shipment in August and the other two not until the succeeding February, held, buyer's delay was unreasonable, and constituted an "acceptance," under G. L. Mass. c. 106, §§ 36, 37.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Acceptance.]

**4. Sales ⊙⟶178(3)—Delay in inspecting and rejecting wool waste held to preclude buyer's rescission (G. L. Mass. c. 106, § 58[3]).**

Where three shipments of wool waste delivered in June were examined, one in August and the other two in the succeeding February, but no definite rejection nor claim for damage made until suit by seller for purchase price, held, right to rescind had been lost under G. L. Mass. c. 106, § 58(3).

**5. Sales ⊙⟶406—Under statute, buyer must give seller notice of defective quality within reasonable time, to be entitled to damages (G. L. Mass. c. 106, § 38).**

Under G. L. Mass. c. 106, § 38, buyer's claim for damages for defective quality of goods sold is unenforceable, unless notice to seller has been given within a reasonable time.

**6. Customs and usages ⊙⟶15(2)—Evidence of custom affecting goods deliverable under contract for "wool waste" held admissible in seller's action for purchase price.●**

In seller's action for purchase price of wool waste, admission of evidence of custom or usage in wool waste trade to effect that contract calling for delivery of "wool waste" or "guaranteed pure worsted threads" permitted a delivery having not exceeding 1 per cent. of extraneous matter, held not error; the custom not being in conflict with the contract.

**7. Appeal and error ⊙⟶694(1)—Where evidence heard by auditor is not before court, his findings must stand, unless controlled by evidence in report or outside it.**

Where evidence heard by auditor is not before court, his findings must stand, unless, either in the report or outside of it, there is evidence to control it.

**8. Reference ⊙⟶101(3)—Recommittal, with instructions to report evidence supporting auditor's findings of fact in action for price of goods sold, held unnecessary.**

Recommittal, with instructions to auditor to report evidence on which findings of fact were based, held not required in seller's action for price of goods sold.

At Law. Action by F. D. Moore against Foss & Co., Inc. On defendant's motion to recommit auditor's report. Motion denied.

Sherman L. Whipple and Arthur M. Beale, both of Boston, Mass., for plaintiff.

Alfred L. Fish and Dunbar, Nutter & McClennen, all of Boston, Mass., for defendant.

BREWSTER, District Judge. I have for consideration defendant's motion to recommit an auditor's report, with directions to revise in respect to certain rulings of law and findings of fact. The action is one in contract, brought by a seller to recover the purchase price for goods sold and delivered. Both parties seem to agree that the Uniform Sales Act (G. L. Mass. c. 106) applies to the transactions in controversy. The report discloses a state of facts which may be summarized as follows:

The plaintiff is engaged in the business of gathering wool waste in England and selling it to customers in the United States and elsewhere. The defendant was one of the customers which had been doing business with the plaintiff for some little time prior to the purchases involved in this suit. On January 21, 1920, the defendant purchased through a broker in Boston a quantity of waste. On February 2 and February 24, 1920, other contracts were entered into through the same broker. The goods were sold by sample. The terms of these contracts all required defendant to pay the purchase price in England when the goods were delivered to the carrier, and bills of lading were to be delivered to the bank representing defendant in England. Letters of credit were arranged for by the defendant's bank in Boston.

On or about April 15, 1920, 10 bales of waste were shipped on the steamship Winifredian, and on or about April 23, 1920, 10 bales were shipped on the steamship Stanmore. The bills of lading and shipping documents were made to defendant's bank in Boston and delivered to the correspondent bank in England, but the invoiced amount was not paid, because the letters of credit, against which the papers were drawn, had expired. A new letter of credit was arranged, expiring May 31, 1920. Before papers could be presented against this new letter of credit, defendant had examined a shipment of waste purchased earlier, and, not finding it to its satisfaction, it caused the second letter of credit to be canceled and notified the broker that thereafter it would not pay for any goods until after it had examined them. In the meantime the first shipment had arrived in Boston and the second was on the high seas. Although the invoices representing these two shipments had not been paid, the bills of lading came into the hands of the defendant's Boston bank, and were later, with plaintiff's

consent, delivered to the defendant. Notwithstanding the defendant's refusal to pay according to the terms of the contracts of purchase, plaintiff elected to ship the waste purchased under the contracts of February 2 and February 24, and accordingly on May 13, 1920, shipped on the steamship Tullamore 16 bales of waste, which arrived in Boston on June 2, 1920. The shipping documents relating to this shipment were sent by plaintiff to the broker, and were by him delivered to the defendant on or about June 1, 1920.

The Winifredian arrived in Boston on May 3, 1920, and the Stanmore on May 10, 1920. The first examination by the defendant of any waste in the first two shipments was not made until August 1, 1920. Examination of the third shipment was not made until February, 1921. When the first examination was made, the defendant expressed dissatisfaction with the quality, but it did not finally say that it would not accept it until shortly before the suit was brought.

The auditor has found that the goods sold did not come up to the sample, and as an alternative finding he finds the amount of the damages sustained by the defendant, but he rules that the defendant cannot recoup these damages, and finds for the plaintiff for the full purchase price.

The rulings of law assailed by plaintiff's motion are the following:

[1] (1) That the original contracts were not canceled by defendant's action in canceling the letter of credit and refusal to pay for goods before inspection.

I think this ruling was correct. The refusal on the part of the defendant to carry out the terms of the original contract respecting payment amounted to no more than a proposal to modify the agreements in this regard, and when acquiesced in by the plaintiff the modification was effected. There is nothing to indicate that defendant intended to repudiate entirely its agreement to purchase the waste. It was willing to purchase, but on different terms as to inspection and payment, and the plaintiff assented to the change.

(2) That the refusal to pay for goods before inspection did not constitute a rejection of the goods themselves.

(3) That the complaint made by the defendant did not amount to a rejection of the goods.

(4) That defendant did not comply with the requirements of the Sales Act relating to an examination or rejection of goods or a claim for damages for breach of warranty.

(5) That the plaintiff is entitled to recover for the full amount of invoices rendered for goods sold according to each of the four contracts.

[2] These rulings raise substantially the same question, viz. whether the defendant was entitled to any of the remedies available to a buyer under the provisions of the Uniform Sales Act. Under the modified contract existing between the seller and the buyer, the latter would not be held to have accepted the goods until he had had a reasonable opportunity to examine them for the purpose of ascertaining whether they conformed to the contract. G. L. Mass. c. 106, § 36. But the buyer is deemed to have accepted the goods when, after a lapse of a reasonable time, he retains the goods without intimating to the seller that he has rejected them. Section 37.

[3] The auditor has found that the goods arrived in May; that documents representing them were delivered to the defendant early in June, after which time it had full and unrestricted opportunity to examine the goods and decide whether it would accept or reject them. One shipment was first examined in August, 1920, and the other two not until February, 1921, and even then it did not give the plaintiff to understand that it would not take the goods. It was not until shortly before this suit was brought that the defendant made any specific claim as to the nature of the defect in the goods, and never, except by suit, presented any claim for damages. The broker, at the plaintiff's request, frequently called upon the representative of the defendant, urging a prompt examination of the goods, but was put off from day to day, without any decision being reached, for a period of six or seven months. The defendant's failure to reject until over six months had elapsed after it had come into possession and control of the goods must be held to operate as an acceptance under the Sales Act.

[4] The same facts preclude the defendant from asserting a right to rescind the sale after delivery. Section 58 (3) provides that a seller cannot rescind for breach of warranty "if he fails to notify the seller within a reasonable time of the election to rescind, or if he fails to return or to offer to return the goods to the seller in substantially as good condition as they were in at the time when the property passed." The auditor was fully justified in his findings and rulings to the effect that the defendant had not acted within a reasonable time in notifying the plaintiff of its election to rescind. The plaintiff was entitled to a much more prompt election.

[5] The remaining question is whether the de-

fendant is entitled to recoup in diminution of the purchase price. It has been stated that independently of the statute (Uniform Sales Act) acceptance of title does not, as a matter of law, constitute a waiver by the buyer of claims against the seller for failure to deliver goods of the quality ordered, but under the statute such claims are not enforceable unless notice to the seller has been given within a reasonable time. Braley, J., in Trimount Lumber Co. v. Murdough, 229 Mass. 254, 118 N. E. 280; G. L. Mass. c. 106, § 38.

When one contemplates that the defendant made no investigation of any of the goods in controversy until about two months had elapsed after it had opportunity to do so, that then only one of the shipments was examined; that no specific defect was called to the attention of the plaintiff or the broker until six or seven months had elapsed, and that the defendant did not, in any form, present a claim for damages, one may entertain serious doubts whether the plaintiff gave any notice to satisfy the requirements of the statute. See Nashua River Paper Co. v. Lindsay, 249 Mass. 365, 144 N. E. 224; Skillings v. Collins, 224 Mass. 275, 112 N. E. 938, Ann. Cas. 1918D, 424. But, if it should be held that he did give such notice, it was not until long after the lapse of a reasonable time. The auditor has so found. It is difficult to escape his conclusions, both of law and of fact. ·

The evidence submitted by the defendant in support of its motion discloses no act of the plaintiff, or those representing him, which could be held to constitute a waiver of his rights to a reasonably prompt inspection and election. On the contrary, it is affirmatively shown that the plaintiff and those acting for him were continually requesting the defendant to make the examination and to pay for the goods according to the contract. The failure of the defendant to seasonably examine and reject the goods or to present its claim for damages is obviously without legal excuse.

[6] The auditor admitted evidence of a custom or usage in the wool waste trade to the effect that a contract calling for a delivery of "wool waste" or "guaranteed pure worsted threads" permitted a delivery having not exceeding one per cent. of extraneous matter. The ruling of the auditor in admitting this evidence is alleged as one of the grounds for recommittal. It is my opinion that the evidence was properly received. The custom did not conflict with the terms of the contract, nor did it subvert any settled rule of applicable law. It related to the method of transacting business in the wool waste trade, and it must be assumed that the auditor found that the usage was generally recognized to such an extent that the parties must be held to have contracted with reference to it. Procter v. Atlantic Fish Co., 208 Mass. 351, 94 N. E. 281; Eldridge v. McDermott, 178 Mass. 256, 59 N. E. 806; Miller v. Stevens, 100 Mass. 518, 97 Am. Dec. 123, 1 Am. Rep. 139.

Thus far I have only dealt with the auditor's rulings of law, upon which his decision was based, so far as they have been attacked by the defendant's motion. The rulings appearing to me to be correct statements of the law applicable to the facts of the case, I must deny defendant's motion to recommit for errors of law.

The defendant further moves that numerous findings of fact of the auditor be stricken out on the ground that "they are not established by the evidence; are contrary thereto, or are only a partial statement of what the evidence establishes." The auditor has not undertaken to report the evidence, and the defendant has included in its motion a request that the report be recommitted with instructions to the auditor to report all the evidence in the case pertaining to the question of complaint, notice of breach of warranty, claim therefor, and acceptance and rejection of the goods, including oral testimony and correspondence.

[7, 8] In view of the circumstance that the evidence is not before this court, the findings of the auditor must stand unless either in the report or outside of it there is evidence to control it. Title Guaranty & Surety Co. v. Ley & Co., Inc., 238 Mass. 113, 130 N. E. 73. Attached to the motion are copies of correspondence and excerpts from the testimony of witnesses which have been given due consideration. I find therein nothing to control the findings of the auditor, or to justify me in disturbing them. It has not been made apparent that his findings are wholly unwarranted by the evidence. The motion presents, of course, the further question whether I should require the auditor to report evidence, as requested by the defendant. A careful consideration of the auditor's report, together with the arguments and brief of the defendant, does not satisfy me that a case is here presented which calls for recommittal with instructions to report evidence, especially in view of the fact that a jury trial has not been waived, and these controverted issues of fact are ultimately to be determined by a jury.

Accordingly defendant's motion to recommit is denied. ·