## EARL T. LORD *vs.* ARTHUR A. WILLIAMS.

Suffolk.    January 17, 1927.— April 16, 1927.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & WAIT, JJ.

*Broker*, Commission.    *Contract*, Construction.    *Words*, "On passing title."

In an action of contract by a real estate broker against an owner of real estate, the declaration was in two counts, the first to recover reasonable compensation for procuring a purchaser of land of the defendant, and the second for services in negotiating a sale of the same property. At the trial there was evidence that the defendant listed the property in question with the plaintiff for sale; that the plaintiff brought it to the attention of a prospective purchaser with whom the defendant entered into negotiations; that the plaintiff had a conversation with the defendant which he confirmed by a letter setting forth in detail the proposed transaction "as accepted by you and" the prospective purchaser and containing the statement, "A commission of $1,000 is to be paid to . . . [the plaintiff] on passing title." The defendant and the prospective purchaser executed and exchanged agreements in accordance with the terms stated in the plaintiff's letter. Subsequent extension of the agreement followed oral conversations of the defendant and the prospective purchaser, as to which, the plaintiff testified, he was not informed, and different agreements were made between them. No sale occurred because of the failure of the prospective purchaser to meet the terms of the modified agreement. There was testimony by the defendant's witnesses that in the later negotiations the plaintiff waived his commission. The judge refused to order a verdict for the defendant. The jury found specially that it was not a condition of the plaintiff's employment that an actual sale should take place before a commission should be earned. *Held*, that

(1) "On passing title" in the plaintiff's letter to the defendant did not as a matter of law import a condition rather than a period of time beyond which the plaintiff need not wait for his compensation, nor that the defendant was to pay the plaintiff a commission only in the event the plaintiff actually brought about a sale of the premises;

(2) It was proper to submit to the jury the issues, whether the employment of the plaintiff was to find a purchaser who was ready, willing and able to buy the property on the owner's terms, or actually to bring about a sale of the land;

(3) It was proper to refuse to order a verdict for the defendant upon the issues of the terms of the plaintiff's employment and whether or not such terms had been fulfilled;

(4) Upon the finding by the jury, the plaintiff's right to a commission accrued when the defendant and the prospective purchaser executed and delivered an agreement for sale;

(5) Whether there was a later waiver by the plaintiff of his commission was a question of fact for the jury;

(6) Upon the question of the plaintiff's right to a commission as well as upon the question of any waiver of that right, it was immaterial whether the agreement later made by the defendant and the prospective purchaser was enforceable by the defendant.

CONTRACT, with a declaration described in the opinion. Writ dated June 10, 1924.

A paragraph in the defendant's answer was as follows: "And further answering the defendant says that on or about February 13, 1924, he and the plaintiff entered into an agreement that the defendant would not require Mr. Gutlon to make a deposit of $1,000 at the time of passing papers in the transaction between them provided the plaintiff would agree that his commission should not be paid until Mr. Gutlon had begun work on the premises in question and showed reasonable evidence that the buildings would be put into condition for occupancy or repaired; and that, acting upon this agreement, the defendant thereupon made an agreement with M. Gutlon that no deposit other than the adjustments need be made by M. Gutlon when the papers were passed."

In the Superior Court, the action was tried before *Qua,* J. Material evidence, requests for rulings, and rulings made and instructions given by the judge are stated in the opinion. There was a verdict for the plaintiff in the sum of $1,123.67. The defendant alleged exceptions.

*W. R. Bigelow,* for the defendant.

*C. B. Cross,* (*J. S. McCann* with him,) for the plaintiff.

PIERCE, J.    This is an action of contract brought by a real estate broker to recover a commission. The first count of the declaration was to recover reasonable compensation for procuring a purchaser for land of the defendant, and the second count was for services in negotiating a sale of the same property. The answer was a general denial and a modification of the agreement constituting accord and satisfaction between the parties.

The case comes before this court, after a general verdict for the plaintiff, on exceptions taken to the judge's refusals

to direct a verdict for the defendant and to give the defendant's requests for rulings numbered 9 to 13. These requests are as follows: "9. No legal and binding contract between Mr. Gutlon and the defendant for the purchase and sale of the property in question was ever made. 10. Upon all the evidence the written agreement dated January 7 was not delivered to Mr. Williams and the delivery assented to by him as a binding contract. 11. The plaintiff's letter to the defendant dated January 11 in which the signed agreement dated January 7 was returned to Mr. Williams called for further negotiations between the parties which were subsequently entered into, so that the receipt of that letter containing the written agreement by the defendant was not a final delivery of that agreement. 12. It was competent for Mr. Gutlon and Mr. Williams to vary the written agreement dated January 7 by a subsequent oral agreement between themselves, and such subsequent oral agreement would then be substituted for the written agreement which was thereupon abandoned or rescinded. 13. If Mr. Lord knew of and assented to the substitution of a subsequent oral agreement for the written agreement dated January 7, he cannot claim a commission. because of the signing of the agreement dated January 7." No objections were taken to any part of the judge's charge. The judge submitted to the jury for its determination the question, "Was it a condition of the plaintiff's employment that an actual sale should take place before a commission should be earned?" The jury answered "No." It was agreed that anything that was signed in regard to the transaction in question by Herbert T. Boardman was done as agent for the defendant.

The pertinent facts of the record succinctly stated are in substance as follows: The defendant listed the property in question with the plaintiff for sale and the latter brought the property to the attention of one Moris Gutlon. Thereafter the plaintiff and Gutlon had conferences with the defendant about the purchase and sale of this property.

On January 4, 1924, the plaintiff had a conversation with the defendant "which was substantially as stated" in the following letter addressed to the defendant: "Confirming

our conversation over the telephone this morning, the following is my interpretation of the deal as accepted by you and Mr. Gutlon: Moris Gutlon, of Boston, is to purchase from you #52 Kneeland Street subject to a first mortgage of $9000 at $5\frac{1}{2}\%$ and # 54 Kneeland Street subject to a first mortgage of $9000 at $6\%$, paying you $40,000 for both properties, you to carry the properties on a second mortgage above the $18,000 on both properties for the term of one year, he to give you $1000 cash on taking title to show good faith, the $1000 to be returned to Moris Gutlon as soon as you are satisfied that he will faithfully perform his part of the agreement. A commission of $1000 is to be paid to E. T. Lord, 15 State Street, Boston, on passing title. I trust that I have gotten this all straight and that it will be possible for you to have the agreements ready for signature early Monday morning . . . . Mr. Gutlon informed me that he had a side agreement with you, that he made over the telephone, and that I know nothing about, that in the event of his paying you in full the second mortgage in sixty days that you would return to him $2000, the difference between what you agreed to take ($38,000) originally and $40,000, if you carried the second mortgage through for the year." Shortly after receiving this letter, the plaintiff in a conversation with the defendant agreed "that in the event of Mr. Gutlon paying the mortgages, and his buying the property at $38,000, the commission was to be paid on the basis of $38,000 instead of $40,000."

Pursuant to this letter agreements were drafted, subsequently amended, finally signed under date of January 7, 1924, by both parties, and one delivered to Gutlon and the other to the defendant. Some inconclusive correspondence followed.

The agreement provided that the premises were to be conveyed on January 30, 1924. But this was not done; and during the negotiations the defendant and Gutlon agreed to put through the transaction on February 15, 1924, at two o'clock, at the Suffolk registry of deeds. After January 30, 1924, the defendant and Gutlon carried on negotiations looking toward certain changes in the terms of the agreement;

but the plaintiff testified: "I was not aware of what had gone on"; and on cross-examination testified "that he heard Mr. Gutlon testify that Gutlon was reporting to him every day practically before this transaction on the fifteenth of February with reference to his negotiations with Mr. Williams and would say that it was not every day. He was not reporting to me at all. Mr. Gutlon and Mr. Williams had been in conference a good many times. In other words, I couldn't control either of them. They would get together irrespective of brokers, and didn't know what they were talking about. I was not kept informed by Mr. Gutlon of the progress of his talks with Mr. Williams with reference to making the final arrangement. I understood there was some arrangement that there was to be no payment of $1,000 in cash when this transaction went through, if it did go through on the fifteenth of February. It was either Mr. Gutlon or Mr. Williams who told me that."

On February 9, 1924, the defendant wrote and Gutlon received the letter which follows: "As I understand it, you are still willing to put through the trade on 52 and 54 Kneeland Street as of Jan. 30, 1924, with my taking a first mortgage to run one year for $40,000.00 which will stand as the purchase price and you to pay adjustments amounting to $305.80 together with a deposit of $1000.00 in cash, which is to be returned to you as soon as we are satisfied that you will materially improve the property. I also understand and agree to return to you in addition $1500.00 if the mortgage is paid off in full inside 60 days. In view of the fact that there have been several delays through no fault of mine, I must insist that the trade be consummated before Friday the 15th as otherwise I will consider the whole matter cancelled." Gutlon testified that he talked with the plaintiff on February 14 about the transaction and told him what the transaction was, "that I was to take the deed to this property in Mr. Jennison's name subject to a first mortgage of $40,000, and that Mr. Jennison was to give me back a second mortgage of $15,000, and that I was to pay the adjustments amounting to about $305, less the rent of $45 and that was the whole transaction. I was not to put in any cash at all."

When I told Mr. Lord this transaction he said, 'That is all right.'" The defendant testified: "I did agree and say [at the office of the plaintiff on February 13] I would waive my $1,000 cash payment if Mr. Lord would waive his commission until such time as Mr. Gutlon put the building in condition, or showed that he was going to do it." This conference and statement both Gutlon and the plaintiff denied.

On February 15, 1924, the defendant, Gutlon, Jennison and one Pike met at the registry of deeds, shortly after two o'clock. Gutlon did not have enough money to put through the transaction. There was testimony that Gutlon told the defendant he was going down to his safe deposit vault at the State Street Trust Company, at 53 State Street, to get the money; that the defendant said "Go ahead," "I will wait," or said, "All right." There was other testimony to the effect that Gutlon asked the defendant to wait five minutes while he went down stairs to get the money; that he said, "If you will wait five minutes I will go down stairs in a vault and bring up the money. I will be gone five minutes." There was evidence that the defendant waited from twenty-five minutes past two until five or ten minutes of three, and then went away. The plaintiff was absent from Boston on February 15, but on his return he telephoned the defendant in substance that he was pretty sure Gutlon would get the money. "Mr. Gutlon has the money ready, and I know if you will try it once more, everything will be all right." The defendant replied no, he would not try it again. On February 18, 1924, the plaintiff sent the defendant a letter demanding his commission and the defendant denied liability.

Unless the words "on passing title" contained in the letter of January 4, 1924, already quoted, as matter of law import a condition rather than a period of time beyond which the plaintiff need not wait for his compensation, the amount of which if earned is not in dispute, or unless that letter as matter of law established that the defendant was to pay the plaintiff a commission only in the event the plaintiff actually brought about a sale of the premises, the judge was right in submitting to the jury the issues, whether the em-

ployment of the plaintiff was to find a customer or a purchaser who was ready, willing and able to buy the property on the owner's terms, or whether the employment was not simply to find a purchaser who was ready, willing and able to buy the property on the owner's terms but one who was actually to bring about a sale of the land. Upon these issues the evidence was rightly submitted to the jury. The evidence and the inferences which might properly be drawn from it and from all the circumstances of the employment were normally susceptible of different conclusions of fact, and taken in an aspect most favorable to the plaintiff's contention reasonably warranted the special finding of the jury that it was not a condition of the plaintiff's employment that an actual sale should take place before a commission should be earned.

The judge, upon the letter of January 4, 1924, and upon the acts of the defendant and of his agent Boardman, all of which have been described in detail so far as material, rightly refused to direct a verdict for the defendant upon the issues of the terms of the plaintiff's employment and whether or not such terms had been fulfilled. The contention of the defendant set up in his amended answer, although supported by his testimony, was contradicted by the plaintiff and by the customer Gutlon. And this issue was submitted to the jury with instructions to which neither party took exceptions.

The defendant's request on the matter of passing title rests upon the assumption that the plaintiff's right to a commission was conditioned on the passing of title. As has been said, the issue in this respect on the facts of the case was one of fact and not of law. *Rosenthal* v. *Schwartz*, 214 Mass. 371, 373. *Goldman* v. *Eisenberg*, 256 Mass. 566. The defendant's request numbered 9 on the evidence was refused rightly. The evidence warranted a finding that Gutlon was not only able, willing and ready to take the property on the defendant's terms, but actually executed at the instance of the defendant, on January 7, 1924, an agreement under seal with the defendant's nominee for the purchase and sale of the property on January 30, 1924. The defendant's request 10 was refused rightly. The evidence was

ample that the agreement was delivered to the defendant and that the delivery was assented to by him as a binding contract.

Requests 11, 12 and 13 were also properly refused. The plaintiff's right to a commission had accrued when the agreement was signed and sealed by Gutlon and the nominee of the defendant. Of course, thereafter, this agreement could be modified or rescinded and an oral agreement be substituted in its place with the assent of Gutlon and the defendant; and the plaintiff could waive and surrender his right to any commission which he had earned, if the parties to the original agreement at his request express or implied entered into a new and substituted contract which was dependent upon the giving up of the plaintiff's commission. The plaintiff denied any such undertaking or agreement on his part, and the issue between the plaintiff and defendant thereby raised was submitted to the jury with instructions to which no exception was taken. Whether or not there was a waiver was a question of fact. *Osadchuk* v. *Gordon*, 251 Mass. 540. *Title Guaranty & Surety Co.* v. *Fred T. Ley & Co. Inc.* 238 Mass. 113, 119. *St. John Brothers Co.* v. *Falkson,* 237 Mass. 399. Upon the question of the plaintiff's right to a commission as well as upon the question of any waiver of that right it is quite immaterial whether, under the form of the agreement which the customer (Gutlon) and Boardman executed at the request of the defendant, Gutlon had any enforceable rights against the defendant on the agreement.

No error is found in the refusal of the judge to grant the motions or to give the requested rulings.

*Exceptions overruled.*